## EVANS McCRILLIS v. SILAS CARLTON.

### Contract. Fraud.

A purchaser cannot rescind a contract induced by misrepresentation and fraud, after he has disposed of the purchased property, by offering to restore to the vendor what he, the purchaser, has received for it, although he disposed of it before discovering the fraud.

His remedy will be an action for damages, or a reduction from the contract price, to the same extent, if that is yet unpaid.

ASSUMPSIT upon the common counts for goods sold and delivered. Plea, the general issue. Trial by jury, September Term, 1862, PECK, J., presiding.

The plaintiff, after the filing of new counts, under objection by the defendant, introduced evidence tending to prove that on the 6th day of February, 1860, he and one G. A. Gilman were the owners of between 14,000 and 15,000 pounds of butter, at Marshfield, each an undivided half, and that on that day he sold his undivided half to the defendant at the price of twenty-one cents per pound, by the consent of Gilman; that the plaintiff was to receive his pay with interest, by the 1st of April following, and as much sooner as the defendant should receive the money, from time to time, out of the proceeds of sales of the butter. It appeared that there was a loss on said half of the butter of $398.32 from the contract price agreed on in the defendant's purchase of the plaintiff, which the defendant neglected and refused to pay. The plaintiff claimed to recover this balance of $398.32, and interest,

It appeared that butter, prior to and about the first of February had been high in market, and that about that time it was some lower and sales dull; that good lots of butter could not be sold in market for over eighteen cents per pound, and that there was but little prospect of the market being better that spring.

There was no dispute about the contract price, stipulated in the sale to the defendant, nor about the amount of payments made by the defendant to the plaintiff.

The defendant introduced evidence tending to prove that on the 6th day of February, 1860, aforesaid, the plaintiff had the knowledge of the situation and prospect in relation to the Boston butter market, and the defendant was wholly ignorant of the same; that on that day the defendant, learning that the plaintiff had come home from Boston, and not having heard from thirty tubs of butter which he, the defendant, had previously sent to Boston, applied to the plaintiff to know whether he had learned in Boston whether the defendant's butter was sold or not; to which enquiry the plaintiff replied that the defendant's butter was all in market and all sold for twenty-five cents per pound; that the defendant then inquired of the plaintiff if he had sold his butter, to which the plaintiff replied that he had not; that the butter merchants were holding on to their butter and thought it would be higher in March; that the plaintiff then proposed to sell his butter to the defendant, saying he wanted to go into dealing in horses (as it appears he did immediately after) and had not time to attend to the butter; that the plaintiff made no disclosure to the defendant of the fall of butter in market; but the defendant was induced to make the trade, relying on a warranty of the quality of the butter and on the statement that the defendant's butter had been all sold at twenty-five cents per pound; that the defendant that day, and before he closed the trade, inquired of the plaintiff the second time if the defendant's butter was sold at twenty-five cents per pound, and the plaintiff replied it was.

The defendant's evidence tended to prove also that a portion of the butter was of poor quality; that before he discovered this fact he had disposed of the butter and received pay for it, and paid the same all over to the plaintiff, besides paying freight and losing his time.

McCrillis v. Carlton.

The defendant also offered evidence tending to prove that on the 6th day of February, 1860, aforesaid, there had been sold but three tubs of the defendant's butter, and that the remainder of said thirty tubs was afterwards sold, some of it as low as twenty cents per pound, and that the plaintiff was not informed by Howe, who had defendant's butter for sale, that it had all been sold as aforesaid.

The evidence on the part of the plaintiff tended to show that he did not warrant the butter, nor make any representations, except as matter of opinion, as to the quality of the butter.

There was no evidence on either side tending to show any misrepresentation by the plaintiff as to the state of the market or price of butter, except the evidence above stated as to the defendant's butter being sold at twenty-five cents.

It appeared from evidence on both sides that when the plaintiff was in Boston the butter dealers generally held out that the prospect was that butter would be the highest in March, and the plaintiff's evidence tended to show that such butter dealers then so informed him, and advised him to hold his butter till March, and that he believed such was the prospect when he sold the butter to the defendant; the plaintiff's evidence also tended to prove that the plaintiff did not tell the defendant that his, the defendant's, butter was all sold, or make any false representations to the defendant on that subject, or any other.

The other facts, together with the requests of the defendant to the court, and the charge in respect thereto, are set forth in the opinion. To the refusal of the court to charge as requested and to the charge as given the defendant excepted.

Verdict for the plaintiff for $313.55.

*Wing, Lund & Taylor*, for the defendant, insisted that every contract, which has been induced by fraudulent representations, or by intentionally concealing the true state of the facts with the intent to overreach the other party and obtain an advantageous contract, is voidable at the election of the party injured. *Fitzsimmons* v. *Joslin*, 21 Vt. 129; *Loomis* v. *Wainwright*, 21 Vt. 520; *Adm'r of Wilson* v. *Green et al.*, 25 Vt. 450; *Redington & Co.* v. *Roberts*, 25 Vt. 686; *Baxter* v. *Downer*, 29 Vt. 412; *Paddock* v. *Strobridge*, 29 Vt. 470; *Adams* v. *Soule et al.*, 33 Vt. 538; *Phelps et al.* v. *Conant et al.*, 30

---

McCriilis *v.* Carlton.

---

Vt. 277; *Concord Bank* v. *Gregg*, 14 N. H. 331; *Hoit* v. *Holcomb,* 3 Foster, 535; *Mathews* v. *Bliss*, 22 Pick. 52.

The defrauded party does not lose his right to rescind because the contract has been in part executed and the parties cannot be fully restored to their former position, if the parties rescind with reasonable dispatch upon discovering the fraud. *Downer* v. *Smith,* 32 Vt. 1; *Concord Bank* v. *Gregg*, 14 N. H. 331; *Holbrook* v. *Burt*, 22 Pick. 554; *Ketletas* v. *Fleet*, 7 Johns. 328.

*P. Dillingham,* for the plaintiff.

There can be no rescinding of the contract on the part of the defendant, unless he can or has put the plaintiff *in statu quo*, or has offered to do it and the plaintiff refused. *Harrington* v. *Wells*, 12 Vt. 505; *Thornton* v. *Wynn*, 12 Wheaton, 183; *Warner* v. *Wheeler*, 1 D. Chip. 159; Parsons on Contracts, 1475; *Poor* v. *Woodburn et al.* 25 Vt. 235; *Shepard* v. *Temple*, 3 N. H. 455; *Perley* v. *Balch*, 23 Pick. 286; *Hunt* v. *Silk*, 5 East, 449; *Allen* v. *Hooker*, 25 Vt. 137; *Harrington* v. *Stratton*, 22 Pick. 510; *Cook et al.* v. *Carter*, 9 Cush. 266; *Street* v. *Blay*, 2 B. & A. 456.

POLAND, Ch. J. The exceptions taken to the leave given the plaintiff to file new counts, is not now insisted on.

That part of the defence growing out of the alleged misrepresentation by the plaintiff of the quality of the butter sold, is also disposed of, as no exception was taken to the instructions given the jury upon that branch of the defence.

The remaining questions grow out of the alleged false representations of the plaintiff as to the state of the market for butter in Boston at the time of the trade, and the future prospect of the market.

The court charged that the plaintiff was not bound to disclose to the defendant his knowledge of the state of the market; that in respect to that, each party must look out for himself.

It is hardly claimed that in this respect the court committed any error, and in respect to the sale of marketable commodities, such has always been understood to be the rule, and seems to have been sanctioned by this court in *Paddock* v. *Strobridge*, 29 Vt. The court did charge that if the plaintiff knowingly misrepresented the existing state of the market to the defendant, and that the defendant relied upon his representations, and was thereby deceived to his prejudice,

McCrillis *v*. Carlton.

it would not render the contract void so as to preclude any recovery, but would entitle the defendant to claim a deduction from the contract price to the extent of the damages he sustained by reason of such misrepresentation.

The main objection made by the defendant to this part of the charge is, that the court did not comply with his request, and charge that such fraudulent misrepresentation entitled him, at his election, to avoid the contract.

But the charge of the court, and their neglect to charge as requested, must be looked at in reference to the state of facts before the court. The principle is undoubted, that where a contract is induced by misrepresentation and fraud, the party who has been defrauded, may, upon discovering the fraud, rescind the contract, and thereby relieve himself from obligation to perform it, although a mere breach of warranty without fraud would not entitle him to do so. But the difficulty in the present case is, that the facts were not such as to entitle the defendant to claim any such charge. The defendant never did rescind the contract, or offer to rescind it, and had before the suit was brought actually disposed of the entire property purchased of the plaintiff and put it wholly out of his power to rescind. In such case, the defendant having put it out of his power to restore to the plaintiff what he has received by virtue of the contract, must rely upon the remedies which the law reserves for him, either by a separate action for the fraud, or by claiming a reduction from the contract price, to the extent to which he has been a sufferer by the fraud.

It has been held in some cases, that although the purchaser may have made some partial change or disposition of the purchased article before discovering the fraud, this would not deprive him of the right to rescind, provided he was able to restore substantially what he received by the purchase, and offered to do so immediately on discovering the fraud. But no case has been brought to our attention, and we know of none, where it has ever been held that where the purchaser had wholly disposed of the purchased property, either for money or anything else, before discovering the fraud, that he could rescind by offering to restore what he had received for it. He has then received the full benefit of the contract, and the avails of

his purchase, and if these were less than he had the right to expect, and the loss was occasioned by actionable fraud on the part of the vendor, the law furnishes an adequate remedy by an action for the damage, or by a deduction from the contract price to the same extent, if that is yet unpaid.

In the present case the defendant claimed that the loss he suffered on the sale of the butter, between the price he agreed to pay the plaintiff for it and what he received in market for it, was all occasioned through the fraud of the plaintiff.

If his evidence established this, then under the charge of the court the jury should have given the defendant a verdict, and the error by which the defendant suffered was not in the court, but in the jury, and is beyond our power to correct.

But the reasonable supposition is, that the evidence did not prove so much as the defendant claimed.

The court also charged that what the plaintiff said to the defendant as to the future prospect of the market for butter was necessarily, and upon its face, but the expression of opinion or judgment, and was not such a misrepresentation as would entitle the purchaser to avoid the sale, or maintain the action.

If the representation was of the existence of particular facts, in their nature calculated to affect the future state of the market, and were false, and known to be so by the seller, and the purchaser was thereby deceived and defrauded, I should think they amounted to an actionable fraud.   But such does not appear to have been the representation of the plaintiff.

It did not appear but that the plaintiff honestly believed all he stated in relation to the prospective improvement of the market for butter, nor was there any evidence but that the plaintiff was advised by butter dealers as he represented to the defendant.   Upon the state of evidence presented by the case, we think the court gave the defendant all legal opportunity to make his defence successful, so that he has nothing to complain of which is in our power to remedy.

Judgment affirmed.