ALFRED A. COHEN, APPELLANT, *v.* JOHN W. ELLIS AND OTHERS, RESPONDENTS.

*Rescission of a contract — the party seeking it must be prepared to return the property received by him under it.*

Where a purchaser of mortgage bonds, owing to the insolvency of the company issuing them, and a foreclosure of the mortgage, given to secure them, by the trustee named in it, has been induced to exchange such bonds for new bonds issued to him at the rate of fifty cents for each dollar of the bonds so exchanged, he is not in a position to insist upon a rescission of the contract originally made for the purchase of the bonds so exchanged. Nor is he entitled, on tendering the bonds accepted in the place of those originally purchased, to recover of the party selling the latter to him the purchase-money paid therefor; notwithstanding the fact that the representations made by such seller, at the time of the purchase of the original bonds, were such as would entitle the purchaser thereof to rescind the original contract made for their purchase had he retained in his hands the original bonds, and although such new bonds are of much greater market-value than the original bonds for which they were exchanged would have been if they had been retained by the purchaser.

A party proposing to rescind a contract is not permitted to deal with or change the nature of the property received by him, and then insist upon his right to rescind by returning the new article which has in that manner come into his possession.

APPEAL by the plaintiff from an interlocutory judgment, sustaining demurrers interposed to the complaint, rendered at the New York Special Term, and entered in the New York county clerk's office, July 8, 1887.

*William G. Choate,* for the appellant.

*Joseph H. Choate, B. H. Bristol, Howard Mansfield, Hugh L. Cole* and *William C. Gulliver,* for the respondents.

DANIELS, J. :

This action was before this court on a preceding appeal from a judgment overruling a demurrer to the original complaint. That judgment was considered to be erroneous for the reasons at the time assigned, and it was reversed with liberty to the plaintiff to amend the complaint and bring in another party. (*Cohen* v. *Ellis,* 4 N. Y. State Rep. 721.) It was then considered that the representations relied upon and set forth would entitle the plaintiff to rescind the

contracts made for the purchase of the bonds. But as the defendants acted as agents for the construction company, that company, or its receiver, should be brought into the action in order to entitle the plaintiff to maintain it. Since that decision was made the complaint has been amended, and the North River Construction Company, the party at that time omitted, together with its receiver, have been added as defendants in the action. In this manner the objection which was then found to exist to the right of the plaintiff to maintain the action has been removed, but another and different objection is now presented to the ability of the plaintiff, or of his executrix, he having died since the judgment, to maintain this action.

The bonds, which were purchased by the plaintiff, were issued by the New York, West Shore and Buffalo Railway Company. After their purchase default was made by the company in the payment of its secured debts, and an action was commenced by the trustee named in the mortgage given to secure the bonds, to foreclose the mortgage and sell the mortgaged property. While this action was pending a scheme was set on foot through which the railway property should be sold for the benefit of the owners of the bonds, and a new company organized to take the property under the sale from the committee appointed to purchase it, and this new company should issue bonds not exceeding in amount $50,000,000, bearing interest at four per cent, and $10,000,000 of capital stock, and such bonds should be secured by a mortgage upon the property and guaranteed by the New York Central and Hudson River Railroad Company, which company should take a lease of the property sold for a long term of years. Under this arrangement or plan the railway property incumbered by the mortgage for the security of the bonds issued by the New York, West Shore and Buffalo Railway Company, was sold and purchased by the committee acting for the bondholders. And under their agreement and authority the West Shore Railroad Company was organized, the property conveyed to it, and the fifty millions of bonds issued by it. The lease agreed upon was also executed to the New York Central and Hudson River Railroad Company and that company guaranteed the bonds of the West Shore Railway Company. These bonds issued and guaranteed in this manner were, under the scheme which had been adopted and acted upon, to be exchanged at the rate of fifty cents on the dollar

for the bonds of the New York West Shore and Buffalo Railway Company. And a time was prescribed within which the exchange should take place and after which it was not to be permitted.

This exchange was to be made by a deposit of the bonds of the old company with Drexel, Morgan & Co., and a sufficient number of bonds were so deposited to entitle the plan or scheme to be carried into execution. A circular was issued by this firm in July, 1885, informing the bondholders of the reorganization plan, and of the necessity for depositing their bonds to receive in exchange this percentage of the new bonds of the West Shore Railroad Company. After this circular was received and the plaintiff had obtained information concerning the terms which had been prescribed, he did deposit his 200 bonds of $1,000 each with Drexel, Morgan & Co., and received from them 100 bonds of $1,000 each, issued under the new organization and guaranteed by the New York Central and Hudson River Railroad Company. These newly-issued bonds are stated to be of the value of $103,000, while the 200 bonds issued by the New York, West Shore and Buffalo Railway Company would be of no greater value, in any event, than the sum of $46,000. And it is proposed, in order to entitle the plaintiff to maintain this action, that the new bonds shall be surrendered up and accepted by the defendants in place of the 200 old bonds received under the original contracts for their purchase, and those contracts shall be rescinded and the plaintiff permitted to recover the amount paid by him for the bonds and the stock delivered to him accompanying the bonds.

It will be seen, from this statement, that the bonds which the plaintiff was induced to purchase by the fraudulent representations made the subject of the complaint have been wholly surrendered and passed beyond his control under the arrangement made to complete the foreclosure and form and organize the new company to take and operate the railway, which was incumbered as security for those bonds. They are no longer in his hands or under his control, but have been retired and extinguished as existing demands. And the point, therefore, arises whether he may still insist upon the rescission of the two contracts made for the purchase of these bonds by returning the newly-issued bonds, and recover from the defendants the purchase-money paid for the old bonds. In answer to this

position, which has been taken and maintained with great zeal and
ability on the part of the plaintiff, the legal rule has been relied
upon that, to entitle a party to rescind a contract because of the
fact that he was induced to enter into it by means of false and
fraudulent representations, he must first return, so far as he may
not be prevented from doing so by the act of the defendant,
whatever he has received through the performance of the contract.
This rule has been repeatedly asserted and often acted upon in
litigations of this description by courts of justice; and, with unexcep-
tional unanimity in all well-considered cases, the courts have adhered
to the rule that before an agreement which the party may be entitled
in this manner to rescind can be rescinded, he or it must offer or
tender, by way of return to the other party, all that has been
received under or as fruits of the contract. (*Cobb* v. *Hatfield*,
46 N. Y., 533; *Sharpley* v. *Louth*, L. R., 2 Ch. Div., 663, 685;
*Grymes* v. *Sanders*, 93 U. S., 55; *Graham* v. *Meyer*, 99 N. Y.,
611; *Neblett* v. *MacFarland*, 92 U. S., 101; *Gould* v. *Cayuga
Bank*, 86 N. Y., 75.)

The party proposing to rescind is not permitted to deal with or
change the nature of the property received by him, and then insist
upon the right to rescind by returning the article in that manner
coming into his possession. This was considered in *Sheffield Nickel
etc., Co.* v. *Unwin* (L. R., 2 Queen's Bench Div., 214), where the con-
tract was not allowed to be rescinded, although it might have been
done if the property to be returned had not been changed by the act
of the plaintiff. The same rule was followed in *McCrillis* v. *Carl-
ton* (37 Vt., 139), when the defendant was not allowed to rescind a
contract for the purchase of butter, after he had sold the article so
purchased. In *Scovil* v. *Wait* (54 N. Y., 650) a quite similar deci-
sion was made in this State. And so it was in *Snow* v. *Alley* (144
Mass., 546). This last case underwent an elaborate examination, and
the conclusion already mentioned was reached and sustained by the
court. And in *Francis* v. *New York and Brooklyn Elevated Rail-
road Company* (108 N.Y., 93) the plaintiff had received shares of stock
from the defendant, which he afterwards surrendered, and new
certificates were issued at his request to each one of his three minor
children. And it was held by the court that this prevented him
from rescinding the transaction. And it was there said that "the

theory of a rescission is that the party proceeded against shall be restored to his original position. The plaintiff cannot rescind if he retains in himself, or withholds through another, any fruit of the contract." (Id., 97.)· It is no answer to the objection made that the bonds now offered to the defendants are more valuable than those held by the plaintiff at the time of the commencement of this action, for they are not the bonds received by him under his contracts of purchase, and the defendants have entered into no obligation whatever to accept the new bonds in the place and stead of those originally issued.

Allegations were made in the complaint to relieve the case of this disability. They consist of statements that it was at the instigation and request of the defendants Winslow, Lanier & Company and the construction company and the defendant Green, that the circular of Drexel, Morgan & Company was issued to him containing the information relative to the reorganization, and the surrender and change to be made in the bonds; and that he, believing that the defendants Winslow, Lanier & Company had advised the exchange, was induced to make it. But these allegations are inferential in their nature, not supported by any facts permitting them to be made. The facts, on the contrary, are, that the plaintiff wrote to these defendants, stating that he should deposit the old bonds received from them, unless, by the 20th of August, 1885, he was advised that a greater sum could be realized for them than by the acceptance of the new bonds. To this they did not reply, with the exception of one of the firm, and his answer was, that any deposit which should be made by the plaintiff of the 200 bonds would be entirely on his own responsibility, and without any authority or consent on the part of this member of the firm. Neither of the others answered the letter written to them by the plaintiff, and neither consented in any manner to the exchange in the bonds for the purpose of affecting the relation in which they stood to the plaintiff in this action. What was done, and all that appears to have been intimated, proceeded upon the fact that the plaintiff was the owner of the 200 bonds, and that it would be for his advantage, as such owner, and not as plaintiff in this action, to make the exchange and receive the new bonds. It appears from the complaint, that these defendants

have throughout denied all liability and all accountability to the plaintiff, as well as his right to rescind the original purchases and in that manner entitle himself to the recovery of the money he had paid for the bonds. Their action, so far as he was to be affected, was the same as it was with reference to the other owners of bonds issued by the New York, West Shore and Buffalo Railway Company. They were all alike supplied with the same information for them to act upon in making the proposed exchange, presenting the advantages expected to arise from that exchange. Nothing whatever is shown to have transpired through what in this manner was done and accomplished, from which it can be assumed that these defendants consented that the new bonds might be taken under the reorganization and those new bonds presented to the defendants or used by the plaintiff for the purpose of bringing about a rescission of the original purchases. In this respect the case presented by the complaint appears to be radically defective, disabling the plaintiff, as the facts have been made to appear, from rescinding the original purchases in the manner in which it is proposed that shall be done, and entitling himself to a recovery of the moneys paid for the original bonds.

The judgment, accordingly, should be affirmed, with costs, but with leave to the executrix, who has now been made a party to the action, to amend the complaint within twenty days on payment of the costs of the demurrer and of this appeal.

BRADY, J., concurred.

Judgment affirmed, with costs, but with leave to the executrix, who has now been made a party to this action, to amend the complaint within twenty days on payment of the costs of demurrer and of this appeal.