## WILLIAM R. HENNINGER et al.

*v.*

## CHARLES E. HEALD et al.

1. A corrupt bargaining between one of the parties to an exchange of lands and the agent of the other, renders such exchange voidable at the instance of the party aggrieved.

2. While the law seems to be firmly settled that fraud without damage to the party complaining affords no ground of relief even.in equity, yet both law and equity have a most tender regard for the rights of the complaining party, growing out of the peculiar relations existing between principal and agent and cestui que trust and trustee, so that where any abuse of such relation is discovered the complaining party is entitled to be relieved, whether any actual damage has been established or not; it matters not that there is no fraud meditated and no injury done. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it.

3. A party who obtains possession of property by corruptly bargaining with the agent of the owner, can be compelled to surrender what he has thus acquired.

4. A party who asks for the rescission of a contract upon the ground of fraud, and still has the possession of that which he received under the contract, at the time of the discovery of the fraud, is obliged to retain such possession that he may return it or offer to return it before or at the time of filing his bill.

5. If, for any cause, after the fraud is discovered, a party finds himself unable to retain possession of property, and he intends to ask for a rescission of the contract, it is his duty to inform his adversary of his inability and give him an opportunity to take control of it.

6. A party asking the rescission of a contract upon the ground of fraud, will only be required to restore so much of the property *in specie* as he reasonably can, and the full consideration for so much of it as he may have disposed of before discovering the fraud.

7. A decree dismissing a bill of complaint, after a full hearing upon the merits, is an effectual bar to the complainant and to all who claim under him, so long as such decree is unreversed.

8. The purchaser of the title of lands sold by virtue of an execution issued upon a decree obtained in a suit for the foreclosure of a mortgage which embraces said lands, takes all the title which the mortgagor had and which was conveyed by such mortgage.

9. A grantee· from a *bona fide* purchaser stands in the same position as the· grantor, and will be equally favored by a chancellor, although affected with notice at the time of the grant.

10. Although a party with notice cannot take title with impunity directly, but may take such title at the hand of an innocent third party, yet if he himself has participated in the fraud, or was acting in the capacity of a trustee, then he will be liable, notwithstanding the title be purged of the fraud as to· strangers.

On final hearing on pleadings and proofs.

*Mr. Theodore Little,* for the complainants.

*Mr. John R. Emery,* for the railroad company.

*Mr. R. Wayne Parker,* for Heald and others.

BIRD, V. C.

This bill was filed to rescind an exchange of title to lands and· to compel the defendant to reconvey the title which he received from the complainant, or in case the said Heald has conveyed the· title of the land which he received in exchange, and it be thought more equitable to do so, that then the court should direct Heald to pay the consideration money which he has received. The ground upon which this bill rests is fraud. Henninger employed an agent by the name of Taylor to negotiate the exchange, and it is alleged that Taylor and Heald, in arranging the terms of the exchange, entered into a corrupt agreement by which Taylor was to share one-half of the profits resulting from the subsequent sale of the Henninger farm over and above $150, and also the false representation to Henninger that the land conveyed to him was subject to a mortgage of only $3,000, with interest at five per cent., when in fact it was $3,000 and for six · per cent. The Henninger tract was subject to a mortgage of $5,000. After the negotiations were completed, in which it was· agreed that Henninger should pay to Heald $450, in addition to conveying the title to his land, Henninger and Heald met in the presence of Taylor, Henninger's agent, and expressed their agreement in writing, Henninger and Heald both signing. This

instrument is dated November 16th, 1889. The deeds were exchanged on the 21st day of December following. On the second day after such exchange, Henninger sold and conveyed the land which he took from Heald to his father for $3,000 in cash, subject to the encumbrance which had been referred to in the conveyance from Heald to Henninger.

Before the conveyance of the Henninger tract to Heald, the Jardines, who held the $5,000 mortgage on that tract, commenced foreclosure of their mortgage, which was prosecuted to decree and sale. Heald, as the owner of the title or equity of. redemption, by his attorney, attended the sale and entered into an agreement with the Jardines, by which they were to purchase the title and to convey it to him within thirty days thereafter, upon his payment of the whole amount due upon the decree, with interest. The Jardines purchased the title. Within the thirty days Heald tendered the whole amount that was due to them. This they refused to accept for the alleged reason that Heald had entirely abandoned his contract, and that they had agreed to sell the land or a portion thereof to others. .

Upon the Jardines refusing to convey to Heald, he immediately filed his bill asking for a specific performance of the agreement. The Jardines answered and replication was filed, and the cause went to a hearing before one of the vice-chancellors, who filed his conclusions sustaining the complainant.

Within three days after said conclusions were filed, and before any decree had been entered, Henninger filed a bill asking for the rescission of said exchange, charging fraud as above stated, and, among other things, offering to reconvey the premises which had been conveyed to him, but made no mention of the fact that he had made conveyance thereof for the consideration of $3,000. ' Heald and the Jardines were made parties defendant to this suit. They answered, and it appeared by their answers that Heald had agreed to convey a portion of the land which he took in the exchange to one Elwood Buyers, an agent of the Port Reading Railroad Company, and that the Jardines had conveyed their interest in a portion of the lands to the said railroad company. It also appeared that the title to the entire tract,

28

both of Heald and the Jardines, was so conveyed as to pass to the railroad company. These facts appearing in the answers, a supplemental bill was filed by Henninger. When ripe for hearing the cause was referred to one of the vice-chancellors, and after the partial hearing and examination of witnesses, the complainant's bill was dismissed.

Within a few days thereafter, and before the present bill was filed, the title to the property which Henninger seeks to have reconveyed to him was perfected in the said railroad company, so far as it was possible in the face of a *lis pendens* and of actual notice. Besides this, the Jardines procured a decree dismissing the bill of complaint which Heald had filed against them as aforesaid, seeking a specific performance of their agreement to convey the said premises to him. This, it will be perceived, left the title of the premises absolutely in the Jardines upon the foreclosure and sale by virtue of their mortgage, under which they purchased and after which they conveyed to the railroad company as aforesaid.

The present bill states all of the principal foregoing facts. By it Henninger does not tender a reconveyance of the land to Heald which the latter conveyed, nor does he offer to pay the $3,000 which he received in cash for the said land, but states as a reason for not offering to convey that the land was conveyed beyond his control by virtue of a sheriff's sale under a judgment obtained upon the said mortgage. The prayer of the bill is as follows, amongst other things :

"That it may be decreed that the said exchange was procured by fraud; and that the contract may be rescinded and a reconveyance subject to the Jardine mortgage; and that Heald having the title became a trustee for Henninger; and because of the agreement between Heald and the Jardines, Henninger had a right to redeem the said mortgaged premises; and that thenceforward the Jardines held the title in trust for Henninger; that the railroad company and all other grantees took with full notice of the rights of Henninger; and that the railroad company may be required to reconvey the title to said lands to Henninger, or to account to him for the full value of the premises; or that the said Jardines may be directed to pay to Henninger all the moneys received by them,"

and the prayer for general relief.

There is no prayer for relief against the decree dismissing the bill filed by Heald against the Jardines.

In the first place, I find that there was a corrupt agreement between Taylor, as the agent for Henninger, and Heald, which rendered the exchange voidable and justifies Henninger in asking for a rescission.

In the second place, I find that in other respects the exchange was fair, and the consideration of the one parcel of land for the other, including the boot-money, was fair and reasonable. Because of this it is insisted that the complainant is not entitled to relief, it being claimed that equity will not interfere unless it is established that the complainant has sustained actual damage. The general rule is fully in accord with this insistment. Fraud without damage is no ground for relief either at law or in equity. *Bisp. Eq. 273; Kerr Fr. 94; Garrow* v. *Davis, 15 How. 277; Clarke* v. *White, 12 Pet. 178; Big. Fr. 85; Taylor* v. *Guest, 58 N. Y. 266.*

But, in the third place, while the law seems to be so firmly settled that fraud without damage to the party complaining affords no ground of relief even in equity, yet both law and equity have a more tender regard for the rights of the complaining party, growing out of peculiar relations existing between him and the defendant under some circumstances than others. Perhaps no business relations awaken greater vigilance on the part of courts than that between principal and agent, or what is the same, *cestui que trust* and trustee. So comprehensive are the authorities, both as expressed by elementary text-writers and by the cases considered and determined by judges and chancellors of the highest celebrity, that it may safely be stated that the cases are very few, if any, in which any abuse of such relations has been discovered that the complaining party has not been relieved, whether any actual damage has been established or not. The question has not been whether the breach of confidence resulted in profit to the agent or trustee, or damage to the principal or *cestui que trust*, but whether there has been such breach. The great solicitude of courts has been rather wholly to avoid any recognition of a principle that might, in the hands

of avaricious and cunning men, be turned to their own account, than to inquire whether the beneficiaries have suffered any actual disadvantage. *Story Ag.* §§ *210, 211 ; 1 Story Eq. Jur.* §§ *315, 316 ; Lord Hardwick* v. *Vernon, 4 Ves. 410 ; Lord Abingdon* v. *Butler, 1 Ves. Jr. 206 ; Watt* v. *Grove, 2 Sch. & L. 492 ; Campbell* v. *Walker, 5 Ves. 678 ; Davoue* v. *Fanning, 2 Johns. Ch. 252 ; Cram* v. *Mitchell, 1 Sandf. Ch. 251 ; Van Epps* v. *Van Epps, 9 Paige 237 ; Farnam* v. *Brook, 9 Pick. 212 ; Torrey* v. *Bank of Orleans, 9 Paige 650 ; Dobson* v. *Racy, 3 Sandf. Ch. 60 ; Taylor* v. *Salmon, 4 Myl. & C. 138 ; Wilson* v. *Hart, 1 J. B. Moore 45 ; Lees* v. *Nutall, 1 Russ. & M. 53 ; Maclean* v. *Dunn, 4 Bing. 722 ; Parkist* v. *Alexander, 1 Johns. Ch. 397 ; Coles* v. *Trecothick, 9 Ves. 244, 245 ; Lord Selseg* v. *Rhoades, 2 Sim. & S. 50 ; Purcell* v. *McNamara, 14 Ves. 91 ; Crowe* v. *Ballard, 3 Brown Ch. 104, \*120 ; Massey* v. *Davies, 2 Ves. 317.*

But our own courts have had this very question under consideration. *Marsh* v. *Buchan, 1 Dick. Ch. Rep. 595 :* "An agent who assumes to act for the vendee in the sale of land is bound to disclose to the vendee his existing agency for the vendor, and such failure to disclose is a fraudulent concealment of a material fact. A written contract of sale procured by the agent without this disclosure will not be specifically enforced, even though the price is shown to be a fair one and the vendor is ignorant of his agent's fraud."

This principle had the support of the court of errors and appeals. *Marsh* v. *Buchan, 1 Dick. Ch. Rep. 604 ; Young* v. *Hughes, 5 Stew. Eq. 383.*

The effect of concealment and neglect of duty such as this upon the transaction, so far as Warren is concerned, does not all depend on the question whether or not the result was injurious to the principal. The contract is affected by the misconduct of the agent from considerations of public policy rather than of injury to the principal. The rule which applies to trustees has been equally applied to the relations between the real estate broker and his principal. It matters not that there is no fraud meditated and no injury done. The rule is not intended to be

Henninger v. Heald.

remedial of actual wrong, but preventive of the possibility of it. *Everhart* v. *Searle, 71 Pa. St. 256.*

Again, supposing it to have been ascertained that the fraud perpetrated was of such a nature as to require the interposition of the court, then the question is, whether or not the court ought to lend its aid to the complainants in their efforts to rescind the entire contract. This depends upon the question whether or not Heald had knowledge of or participated in the fraudulent conduct of Taylor.

In *Hegenmeyer* v. *Marks, 37 Minn. 6*, a reconveyance was decreed. A like result was reached in the case of *Miller* v. *Louisville and Nashville R. R. Co., 83 Ala. 274.*

Notwithstanding the former considerations, I find upon looking into the allegations of the first bill, that although there was a sale by the sheriff of the land which was conveyed to Henninger by Heald, Henninger must have had the control of the title or he would not have made the allegations in such first bill; and that having such control of the title after he discovered the fraud, it was his duty to preserve such control in order to reconvey the title to Heald; or, in case he found himself unable to preserve such title for the purpose indicated, to make known his inability to Heald and thereby give him an opportunity to protect such title or to abide the consequences. Had he done this, and then found the title swept away from him by the decree of the court, nothing further would have been required of him. All the law demands under such circumstances is that a party asking rescission shall restore his adversary to his former estate or condition as far as he reasonably can.

"A party demanding a rescission of a contract must return, or offer to return, the consideration received by him. It is a settled principle in courts of equity that relief will never be extended to a party against his own conduct without exacting from him strict justice to his adversary."

The duties or obligations of the party asking relief on the one hand, and the rights of the person against whom relief is sought upon the other, will be found fully expressed in the following cases: *Cobb* v. *Hatfield, 46 N. Y. 537; Gould* v. *Cayuga County*

*National Bank, 86 N. Y. 75, 82 ; Mason v. Bovet, 1 Denio 69 ; Chesterfield* v. *Janssen, 1 Lead. Cas. Eq. 831, 832 ; McCrillis* v. *Carlton, 37 Vt. 139 ; Gay* v. *Alter, 102 U. S. 79 ; Estabrook* v. *Swett, 116 Mass. 303 ; Burton* v. *Stewart, 3 Wend. 236 ; Schiffer* v. *Dietz, 83 N. Y. 300 ; Latham* v. *Hicky, 21 La. Ann. 425 ; 1 Beach Eq. § 76 ; Bartlett* v. *Drake, 100 Mass. 174 ; Voorhees* v. *Earl & Kellogg, 2 Hill 288 ; Coolidge* v. *Brigham, 1 Metc. 547.*

To the same effect are the cases, in our own state, of *Doughten* v. *Camden Building and Loan Asso., 14 Stew. Eq. 556 ; Bayard* v. *Holmes, 4 Vr. 119.* See, also, *Baird* v. *Mayor &c., 96 N. Y. 598, 599.*

I find, if he could not restore the property *in specie*, it was and is his duty to restore, or offer to restore, or to account for that which he received for it. This is in accordance with the spirit of all the cases. No excuse whatever is offered by Henninger for not offering to restore the money received by him for the Blanchard farm. The question is not what the court may compel him to do in case an account should be ordered between him and Heald, but what in equity it is his duty to tender himself ready and willing to do.

In his first bill he offered to reconvey. He had sworn to the truth of the statements in that bill. Did he speak the truth then? He cannot complain if the court takes him at his word. If a strict application of equitable rules as expressed in the foregoing cases were to be applied, this case would end here with a dismissal of the complainant's bill. But since the court feels itself under obligations to discountenance fraud whenever presented, and thinking that equality may be reached by an accounting, I will look further into the case.

I find that the land which Henninger conveyed to Heald, and the equity of redemption therein which Heald thereby acquired, was effectually conveyed to the Jardines by the foreclosure and sale under their mortgage. I find, also, that the decree dismissing the bill of complaint which Heald filed against the Jardines for the specific performance of their agreement to convey to him the last-named premises, effectually secured to

them the absolute fee thereof, since it was the absolute fee that was mortgaged and foreclosed and purchased by them. *Mount* v. *Manhattan Co., 16 Stew. Eq. 25; S. C., 17 Stew. Eq. 297; Vroom* v. *Ditmas, 4 Paige 526, 531; McGee* v. *Smith, 1 C. E. Gr. 462.* See, also, cases cited in *Baldwin* v. *Howell, 18 Stew. Eq. 519.*

While said decree of dismissal is universal, it is an effectual bar to the complainant in that suit and to all who seek to stand in his stead, since that case was fully heard upon its merits.

The Jardines having a perfect title, it is proper that I should find that the defendants, who took title under them, have also a good title. A grantee from a *bona fide* purchaser stands in the same position as the grantor and will be equally favored by a chancellor, although affected with notice at the time of the grant; the grantor's conscience is clear and he may transfer that which he might honestly retain. The rule is not less politic than just, because the *jus disponendi* would otherwise be clogged by a restraint of indefinite duration. *Bumpus* v. *Platner, 1 Johns. Ch. 213; Fletcher* v. *Beck, 6 Cranch 87; Wood* v. *Chapin, 13 N. Y. 509; Boon* v. *Chiles, 10 Pet. 177, 206, 207, 209; Holmes* v. *Stout, 3 Gr. Ch. 492; Condit* v. *Wilson, 9 Stew. Eq. 372; Sharp* v. *Shea, 5 Stew. Eq. 66; Baldwin* v. *Howell, 18 Stew. Eq. 519; Mount* v. *Manhattan Co., 16 Stew. Eq. 25; 2 White & T. Lead. Cas. 33.*

This being so, the complainant's bill must be dismissed as to all of the defendants except Heald, with costs.

Since the proof shows that some of the consideration money passed to Heald, and since I find that he entered into a corrupt agreement with Taylor, the agent of Henninger, it is proper that I should also find that he is liable to account to Henninger for so much of the consideration money as he received. Although a party with notice of a fraud cannot take title directly but may take such title at the hand of an innocent third party, yet if he himself has participated in the fraud or was acting in the capacity of a trustee, then he will be held liable, notwithstanding the title be purged of the fraud as to strangers. *Oliver* v. *Platt, 3 How. 401; Cram* v. *Mitchell, 1 Sandf. Ch.*

*251; 2 White & T. Lead. Cas. 34; 1 Perry Trusts § 222; May* v. *Le Claire, 78 U. S. 217, 236.*

If there be any uncertainty as to the amount of money which Heald actually received from the Jardines or the railroad company, testimony may be submitted on that point.

The complainant is entitled to costs as against Heald.