WILLIAM M. CLEMENS, Plaintiff-Appellant, *v.* PRESS PUB-
LISHING COMPANY, Defendant-Respondent.

(Supreme Court, Appellate Term, April, 1910.)

Contracts — Interpretation of contract — Particular agreements — Con-
tract between publisher and author — Right to publish without au-
thor's name.

> Where the intent of a contract between plaintiff, an author,
> and defendant, a publisher, for the sale of the manuscript of a
> story, requires the publication of the author's name, he is entitled
> to the agreed price, though in consequence of his objection to
> the publication of the story without his name the publisher refuses
> to publish it at all.
>
> Lehman, J., dissents.

APPEAL by plaintiff from a judgment of the Municipal
Court of the city of New York, borough of Manhattan, first
district, dismissing the complaint on the merits at the end
of the trial.

Wilcox & Brodek (Charles A. Brodek, of counsel), for
appellant.

E. C. Crowley, for respondent.

SEABURY, J.    Even the matter-of-fact attitude of the law
does not require us to consider the sale of the rights to a
literary production in the same way that we would consider
the sale of a barrel of pork.  Contracts are to be so construed
as to give effect to the intention of the parties.  The man
who sells a barrel of pork to another may pocket the pur-
chase price and retain no further interest in what becomes
of the pork.  While an author may write to earn his living
and may sell his literary productions, yet the purchaser, in
the absence of a contract which permits him so to do, cannot
make as free a use of them as he could of the pork which
he purchased.

The rights of the parties are to be determined, primarily,
by the contract which they make, and the interpretation of

the contract is for the court. If the intent of the parties was that the defendant should purchase the rights to the literary property and publish it, the author is entitled not only to be paid for his work, but to have it published in the manner in which he wrote it. The purchaser cannot garble it or put it out under another name than the author's; nor can he omit altogether the name of the author, unless his contract with the latter permits him so to do.

The position of an author is somewhat akin to that of an actor. The fact that he is permitted to have his work published under his name, or to perform before the public, necessarily affects his reputation and standing and thus impairs or increases his future earning capacity. As I interpret the contract made between these parties, their intent was that the plaintiff should sell his work to the defendant and the defendant should publish it under the author's name. The action of the parties indicates the interpretation which they placed upon it. When the plaintiff presented his story to the defendant, it contained his name; and the defendant offered him $200 for it if he would reduce it to 20,000 words. Plaintiff accepted the offer, reduced the story as requested and returned it to the defendant with his name upon it. The defendant furnished the plaintiff with twenty-five galley proofs of the story, and it is significant that the proof had the plaintiff's name printed upon it. These circumstances show that, as the parties themselves interpreted the contract, it required the publication of the author's name. The plaintiff proved his case. He had the right to insist that the story should not be published except under his name. The fact that he insisted upon this right does not justify the defendant in withholding payment to him of the amount due under the contract. The failure to publish the story as agreed was a breach of contract by the defendant.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.

GAVEGAN, J. (concurring). The action was to recover $200 as the agreed price for a manuscript sold and delivered

by the plaintiff, an author, to the defendant, a publisher. On August 3, 1909, the plaintiff called at the office of the defendant and offered for sale the manuscript of a story relating to a mysterious murder which had occurred a short time before. After some parleying, the defendant, through its acting managing editor, agreed to take the story, provided it were reduced in length, to pay therefor the sum of $200, and also to deliver to the plaintiff twenty-five galley-proof copies for the use of the plaintiff in disposing of out-of-town rights therein to a syndicate of western newspapers.

Thereafter the plaintiff reduced the length of the story. Then a question arose as to whether the defendant would publish the story in its newspaper under the plaintiff's name, and other interviews were had between the plaintiff and the defendant's agents, from which it appears the defendant refused to publish plaintiff's name with the story, and plaintiff objected to its publication without his name. The testimony as to what transpired at these subsequent interviews, however, was entirely irrelevant and immaterial. In view of the fact that at the first interview, on August 3, 1909, there was a sale and delivery of manuscript by the plaintiff to the defendant, under which title vested in the latter, nothing remained to be done but for the defendant to carry out its promise to pay the purchase price to the plaintiff.

Title to the manuscript having passed by the completed contract, made on August 3, 1909, the defendant was not obligated to publish it at all, nor could plaintiff compel or prevent its publication, with or without his name. The objections, refusals and wishes of the plaintiff after part-ing with the title in the property may betray the eccentrici-ties of the author, but they have no greater weight in law than the wishes of a stranger to the transaction after it was consummated.

It appears that the twenty-five galley-proof copies of the manuscript, constituting a part of the consideration, were delivered by the defendant to the plaintiff, after these inter-views in which the objections and refusals of the parties regarding the appearance of the plaintiff's name were dis-

cussed, and that, when delivered, they contained the name of the plaintiff in the headlines of the story. Plaintiff never returned these galley-proof copies to the defendant, and the defendant retained possession of the manuscript, which should dispose of the respondent's point that there was a rescission, a retention of any part of that which was received upon the contract being incompatible with its rescission. Cobb v. Hatfield, 46 N. Y. 533; Francis v. N. Y., & B. El. R. Co., 108 id. 93; Cohen v. Ellis, 52 Hun, 133.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.

LEHMAN, J. (dissenting). The plaintiff, on August 3, 1909, sold a story to the defendant for publication in the World. Nothing was stated as to whether the article was to be printed with the plaintiff's name, but both parties appear to have assumed that the name was to be added to the article. The article was placed in type; but, before it was published, the defendant notified the plaintiff that it must be printed as an unsigned article, and the plaintiff apparently assumed the attitude that the advertisement to be derived from the publication with his name was an important part of the agreement and refused to permit its publication without his name. The attitude of the parties points clearly to the view that they regarded the contract of August third as either incomplete or ambiguous in regard to the question of the right to demand that the article be printed with the plaintiff's signature. Upon the whole evidence I am brought to the conclusion that the negotiations after the third day of August show an intent on both sides to consider this question *de novo* and to regard the contract of August third either as incomplete or rescinded if the parties failed to come to a conclusion. If this contract was incomplete, obviously the plaintiff has no right of action; if the contract was complete and thereafter rescinded because both parties were doubtful of their rights, the rescission was a compromise of doubtful rights and, therefore, a contract founded upon a good consideration. I find no insuperable objection to the view that the contract was re-

scinded because the plaintiff did not return the twenty-five galley proofs furnished him by the defendant and the defendant did not return the original manuscript furnished by the plaintiff. The defendant's editor testified that the galley proofs were furnished as a courtesy for distribution to other newspapers; and, with copies of the story in his possession, the plaintiff may well have considered the manuscript as of no value. Upon a rescission of a contract by one party, not with the consent of the other but in reliance on a legal right to rescind, the party rescinding must, of course, return the consideration; while, upon a rescission by mutual consent, the necessity for the return of the consideration depends upon the mutual understanding of the parties.

I think that the judgment should be affirmed.

Judgment reversed and new trial ordered.