Arnold L. Fein, J.
Plaintiff, a prominent feminist psychologist, author and lecturer, is the author of a book entitled “ Women and Madness ”, published in 1972 in hard cover by Doubleday, Inc. (Doubleday). The work has received widespread recognition and varying critical comment.
*1049 Plaintiff now moves for a preliminary injunction: (1) restraining defendant Avon Books Division, The Hearst Corporation (Avon), sued herein as Avon Book Division, Hearst Publications, Inc., its agents, servants or employees from: (a) publishing, circulating, distributing, selling or shipping its paperback edition of the book; (b) using plaintiff’s name or likeness in connection with the publication of such paperback version, or otherwise representing defendant’s edition as the work of plaintiff; and (2) directing defendant to recall any such paperback books as may have been shipped or distributed.
This action was commenced by the service of a summons, together with the moving papers, but without a complaint, upon defendant Avon. The order to show cause contained an application for a temporary stay to restrain Avon from distributing or in any manner exploiting the paperback version of plaintiff’s book pending the hearing and determination of the motion for a preliminary injunction.
After hearing argument on the motion, the following stipulation and order was dictated on the record:
" the court : It is hereby stipulated and agreed by and between counsel for the respective parties hereto that the defendants will not until further order of the court sell, give away or otherwise distribute any copies of the paperback publication entitled Women And Madness, by Dr. Phyllis Chesler.
‘ ‘ Upon the basis of that stipulation, defendants are restrained until further order of the court from selling, distributing, giving away, advertising or publicizing the paperback book, Women And Madness, or from using the name or likeness of Dr. Phyllis Chesler in connection with such book
Despite this clear stipulation and order, defendant and defendant’s counsel have seen fit to deny the existence and effect of the order, in an unwarranted exchange of correspondence and statements attempting to avoid their solemn commitment and the court’s order.
Following publication of the hard cover edition,'Doubleday entered into a written contract.with Avon, dated December 27, 1972, granting Avon the right to publish plaintiff’s work in paperback form. This motion is addressed to Avon’s paperback edition.
Plaintiff alleges that Avon’s paperback edition is not a faithful reproduction of her original work as published by Doubleday. She asserts that relevant portions of the text, as well as various illustrations and footnotes, are either omitted, altered or rearranged in the Avon publication. Plaintiff charges that *1050 these changes are so extensive as to amount to “mutilation” of her work, making it so confusing and incomprehensible as to modify substantially and dilute seriously its meaning and intent.
Plaintiff asserts that Avon’s paperback version, in its present form, will subject her to negative criticism, damage her reputation and invalidate her book for use as an authoritative work by potential students and other serious readers.
Shortly after argument on the motion was heard by the court, plaintiff served a complaint pleading nine causes of action. The complaint requests a permanent injunction and damages on the grounds of breach of1 contract, copyright infringement, tortious conduct, including the unfaithful and negligent reproduction of her work, libel and a violation of civil rights. Although named in the complaint as a defendant, Doubleday was not named in the summons, nor, as far as appears, was it served with the summons or other papers in this action or on this motion for a temporary injunction.
The agreement between plaintiff and Doubleday does not reserve to plaintiff any rights to edit, change or otherwise pass upon the final manuscript of the hard cover edition. Nor does the agreement reserve any rights to plaintiff with respect to reprint editions or condensed versions of the book. The agreement authorizes Doubleday to 1 ‘ publish the work * * * in the style and manner ‘ which Doubleday ’ shall deem best spited to its sale ’ ’. Moreover, plaintiff granted Doubleday the right to sell to other publishers reprint rights “ in full length, condensed or abridged versions ”, and the right to sell her work or parts of it for publication in serial form or in excerpts in newspapers or periodicals, and the right to license an adaptation of all or part of the work or extracts for use in periodicals or books.
The agreement between Doubleday and Avon granted Avon a license to publish and sell a “ paperbound reprint edition ” of plaintiff’s work. The agreement required Avon to affix proper copyright notices on the copyright page of its edition and obligated it not to include advertisements in the paperback edition without the author’s consent. Avon was authorized to include any “introduction, index or like material” from the “ trade edition ”. Doubleday agreed to furnish Avon with the original or other reproduction material of illustrations contained in the hardcover edition. Despite the fact that the agreements do not give plaintiff the right to pass upon the format or text of the paperback edition, plaintiff, as an author, *1051 is not powerless to prevent slipshod or truncated use of her work.
Although the authorities are sparse, it is clear that even after a transfer or assignment of an author’s work, the author has a property right that it shall not be used for a purpose not intended or in a manner which does not fairly represent the creation of the author (36 N. Y. Jur., Literary Property and Copyright [1964], § 9; Seroff v, Simon & Schuster, Inc., 6 Misc 2d 383, affd. 12 A D 2d 475; Archbold v. Sweet, 1 M. & B. 162, 174 Eng. Rep. 55). In Archbold, it was held that an author could maintain an action for injury to his reputation against the publisher of a revised edition under the author’s name of a work on criminal law where errors in the revised edition were made by an employee of the publisher.
Plaintiff relies in part on the doctrine of an author’s “ moral right ’ ’ which she asks the court to enforce so as to protect the integrity of her work. The authorities she cites do not establish that such right is recognized in New York. The careful and extensive discussion of the authorities in Seroff {supra) indicates the problems and the limited recognition accorded to the concept. As that case notes, the question very often turns on the terms of the contract between author and publisher.
However, the plaintiff’s right to relief need not be bottomed upon the application of a theory of law which has not been afforded full recognition in this State. The court should not withhold appropriate relief by applying a rigid construction to causes of action or claims asserted by a plaintiff, if a right entitled to protection is shown.
An author or artist is entitled to judicial protection where there is a sufficient demonstration of 11 mutilation ’ ’ or other serious alteration of the creator’s work.
As stated in Clemens v. Press Pub. Co. (67 Misc. 183-184 [Seabury, J., App. Term, 1910]):
“ Even the matter-of-fact attitude of the law does not require us to consider the sale of the rights to a literary production in the same way that we would consider the sale of a barrel of pork * * * While an author may write to earn his living, and may sell his literary productions, yet the purchaser, in the absence of a contract which permits him so to do, cannot make as free a use of them as he could do of the pork which he purchased.
“ The rights of the parties are to be determined, primarily, by the contract which they make, and the interpretation of the contract is for the court. If the intent of the parties was that *1052 the defendant should purchase the rights to the literary property and publish it, the author is entitled not only to be paid for his work, but to have it published in the manner in which he wrote it. The purchaser cannot garble it or put it out under another name than the author’s; nor can he omit altogether the name of the author, unless his contract with the latter permits him so to do ”.
Although the narrow issue there decided was the right of the author to have his own name affixed to the publication of his writings, unless he otherwise contracted, the principle relied on is not limited to that precise case.
The court has compared the relevant portions of the hard cover book, and the paperback edition. It cannot be seriously disputed that defendant did ¡omit the illustrations and a number of reference sources from the paperback edition and did not follow the text of the hard cover book with respect to chapter introductions and column juxtaposition.
The court cannot pretend to be either a literary critic or a well-versed scholar in the field of the plaintiff’s work. The book is obviously >an original, careful and perhaps revolutionary study filled with many new and provocative insights. It is neither easy to read nor to live with.
These essential qualities inhere in both the hard cover and paperback editions. Even granting the variations in the paperback, they do not justify plaintiff’s claim that Avon did not attempt to publish a faithful reproduction of her work or that the paperback edition materially alters the intent of her work.
Unfortunately for plaintiff, the agreement between plaintiff and Doubleday did not forbid 'alterations or omissions in her work without her consent. (Seroff v. Simon & Schuster, Inc., 6 Misc 2d 383, affd. 12 A D 2d 475, supra.)
Nonetheless appropriate action must be taken by Avon in connection with the distribution of further paperbacks and advertising to indicate to the public and prospective purchasers of the paperback version that changes have been made involving chapter introductions, omission of illustrations and footnotes and column juxtaposition. To this extent, there has been a condensation or .abridgement. Although the right to do so exists under the contracts, there is an obligation to make known to readers that the right has been exercised. This is simply telling the truth.
The motion is granted only to the foregoing extent. Counsel are directed to provide suggestions in the order to be settled hereon as to the appropriate notation to be made on future *1053 paperback publication, sale, distribution and advertising. The stay granted in open court is to continue until service of a copy of the order to be settled hereon with notice of entry.