**Wilmot Alfred FRASER and John Birks Gillespie, a/k/a Dizzie Gillespie, Plaintiffs,**

v.

**DOUBLEDAY & COMPANY, INC., Defendant.**

**No. 81 CIV 5339 (LBS).**

United States District Court, S.D. New York.

May 17, 1984.

Orzo Thaddeus Wells, New York City, Cecil J. Banks, Newark, N.J., for plaintiffs.

Satterlee & Stephens, New York City, for defendant; Robert M. Callagy, Cindy V. Schlaefer, New York City, of counsel.

## OPINION

SAND, District Judge.

Plaintiff Wilmot Fraser instituted this action in 1981. Upon defendant's request, Mr. Gillespie was joined as a necessary party in 1983. Plaintiff Fraser then served a third amended complaint which names Mr. Gillespie as a co-plaintiff and asserts five causes of action. Defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56(b). For the following reasons, we conclude that a grant of partial summary judgment pursuant to Fed.R. Civ.P. 56(d) is proper.

### Background

Plaintiffs signed an agreement with defendant on July 4, 1976 under which defendant agreed to publish and sell an autobiography of plaintiff Gillespie co-authored by plaintiff Fraser. This agreement obligated defendant to pay plaintiffs a $20,000 advance to be charged against their future earnings from the book. The publisher retained the right to "publish the work at its own expense, in the style and manner and at the price which it shall deem best suited to its sale ...." Contract ¶ 2. It was also agreed that certain specific expenses incurred in preparing the manuscript for publication would be charged to plaintiffs rather than defendant. The agreement concluded with a standard disclaimer to the effect that any previous oral or written representations were superseded and that the agreement could not be changed, modified or discharged orally. Contract ¶ 35.

Pursuant to this agreement, plaintiffs co-authored a book entitled "To Be Or Not To Bop" and defendant paid the specified advances. The book was subsequently published in English on August 3, 1979 with an initial printing of 12,500 copies. Since this initial printing, 6,000 more copies have been printed by defendant and the book has been reprinted in French, Italian, Swedish and Finnish. The British rights to the book were sold to W.H. Allen & Co. in 1978 and The Nostalgia Book Club purchased book club rights in 1979.

Prior to the book's publication, plaintiff Fraser began to dispute the promotional and advertising plans which defendant had developed for the book. These disputes continued after the date of publication and have culminated in plaintiffs' allegation that defendant breached the publishing agreement by not using "its best or reasonable good faith efforts to advertise, promote and exploit the said work." Third Amended Complaint ¶ 15. Plaintiffs state that this negligence by the defendant is evidenced by the alleged lack of a comprehensive marketing plan for the book, the inadequate size of the first printing, the failure to have an initial printing in foreign languages, and the failure to mention plaintiff Fraser in advertisements. Defendant has responded that it used good faith efforts to promote the book as shown by the size of the first printing, the $9,000 in advertising expenses allegedly spent on the book, the distribution of over 1,000 free copies, and its efforts to sell subsidiary, paperback and foreign rights to the book.

Plaintiffs also allege that defendant has breached several other clauses of the publishing agreement and thereby converted monies due plaintiff to its own use. These alleged breaches include delays in sending plaintiff his royalty statements and a certified statement, the deduction of $1,286.96 from plaintiff Fraser's royalties for publishing expenses, a delay in accounting to

plaintiffs for the sale of book club rights, and the failure to timely reprint the work after the initial stock was depleted. Defendant has denied these and other related allegations and claims that any delays that may have in fact occurred were reasonable or were caused by plaintiffs.

Plaintiffs have also alleged that defendant fraudulently induced plaintiffs into signing the publishing agreement by orally promising that defendant would use its best efforts to advertise, promote and exploit the book. Defendant claims this allegation must be rejected both as a matter of law and a matter of fact.

Plaintiffs finally allege that defendant discriminated against plaintiffs, both of whom are black, on account of their race. Defendant has denied this allegation.

As to damages, plaintiffs contend that because defendant's actions were allegedly actuated by evil and reprehensible motives with malicious intent, punitive or exemplary damages should be assessed against defendant. Defendant claims there is no basis in law for this allegation.

### Discussion

█ Pursuant to Fed.R.Civ.P. 56(d), a court can issue an order that specifies the facts which do not appear to be in substantial controversy if it finds that full summary judgment cannot be granted because there are still genuine issues of material fact to be tried. *See Moss v. Ward*, 450 F.Supp. 591, 594 (W.D.N.Y.1978); *Belinsky v. Twentieth Restaurant, Inc.*, 207 F.Supp. 412, 413 (S.D.N.Y.1962). Upon our review of the pleadings and the affidavits and briefs submitted by each party, we find

that there are no triable issues of fact as yet presented with respect to plaintiffs' claims for racial discrimination and conversion. There are, however, factual controversies as to plaintiffs' allegation of inadequate promotion and the other allegations of breach of contract.

### Racial Discrimination Claim

█ Discrimination in the making or enforcing of contracts on account of race is proscribed by 42 U.S.C. § 1981 (1976). *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 295, 96 S.Ct. 2574, 2585, 49 L.Ed.2d 493 (1976). It is fundamental, however, that conclusory allegations or the mere possibility that a factual controversy may exist is not enough to avoid summary judgment. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980); *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978). Plaintiffs have presented no evidence of racially discriminatory motivation beyond mere suspicion or surmise, nor have they requested further discovery on this issue.[1] Similarly, the claim of disparate treatment seems to be speculative. The fact that plaintiffs are black, which in essence constitutes the entirety of plaintiffs' case on the racial discrimination claim, does not lead to an inference that defendant's conduct was racially motivated. *See Gatling v. Atlantic Richfield Company*, 577 F.2d 185, 188 (2d Cir.1978), *cert. denied*, 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 169 (1979); *Herrmann v. Moore*, 576 F.2d 453, 457 (2d Cir.1978).[2] We thus grant defendant's motion for summary judgment as to this claim unless plaintiffs,

---

1. Though plaintiffs, in the prefatory remarks to their opposition papers, have asserted a general or blanket need for additional discovery, we would expect plaintiffs at this stage in the litigation to spell out discovery requests with particularity. Indeed, plaintiffs have been specific with respect to the need for additional discovery on the breach of contract claim based on defendant's alleged failure to adequately promote the book.

2. We recognize, as the Court of Appeals for the Second Circuit has repeatedly held, that "Issues

of motive and intent are usually inappropriate for disposition on summary judgment." *Wechsler v. Steinberg*, 733 F.2d 1054 (2d Cir.1984) (citing *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962)). Nevertheless, when further discovery on this particular aspect of the case has not been sought and essentially all that plaintiffs can point to in support of their claim is their racial identity, a summary disposition may be appropriate.

by July 18, 1984, present a detailed offer of proof with respect to the racial discrimination claim or particularize a need for discovery in this area.

### Conversion Claim

■ Plaintiffs' cause of action for conversion must also be denied. Under New York law, a claim of conversion cannot be predicated on a mere breach of contract. "An action for conversion can not be validly maintained where damages are merely being sought for breach of contract." *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dept.1982). *See Laurent v. Williamburgh Savings Bank*, 28 Misc.2d 140, 137 N.Y.S.2d 750, 754–55 (Sup.Ct.1954); *Hutchings v. Torrey*, 203 Misc. 1038, 119 N.Y.S.2d 119, 121–22 (Sup.Ct.1953); *Hinkle Iron Co. v. Kohn*, 184 A.D. 181, 171 N.Y.S. 537, 539 (1918), *rev'd on other grounds*, 229 N.Y. 179, 128 N.E. 113. Therefore, to sustain a conversion claim, a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights. *See* 23 N.Y.Jur.2d § 24. In this case, however, plaintiffs have merely repeated two of their breach of contract claims and called them "conversions." These would be valid claims if damages beyond those for the alleged breach of contract claims were available, but this is not the case. Although punitive damages can be awarded for conversions but not for contract breaches, *see infra* p. 1289, we find no support in the record for a claim that defendant's alleged conversion was accomplished with malice or reckless disregard of plaintiffs' rights as would be required to justify punitive damages. *See Ashare v. Mirkin, Barre, Saltzstein & Gordon*, 106 Misc.2d 866, 435 N.Y.S.2d 438, 441 (Sup.Ct.1980), *modified on appeal to delete punitive damages*, 81 A.D.2d 650, 441 N.Y.S.2d 408, 408 (2d Dept.1981), *aff'd*, 54 N.Y.2d 891, 444 N.Y.S.2d 918, 429 N.E.2d 425 (1981); *Merrick v. Four Star Stage Lighting, Inc.*, 60 A.D.2d 806, 400 N.Y.S.2d 543, 544 (1st Dept.1978). At most, plaintiffs have made out a case of inadvertence or oversight with respect to defendant's alleged failure to promptly account for a relatively small sum of money and alleged improper deduction of certain amounts from plaintiffs' royalty contract. Malice has not been pleaded, nor do we believe the circumstances justify providing plaintiffs an opportunity to replead this claim. Our decision to strike the conversion claim will in no way prevent plaintiff's from recovering damages for alleged wrongdoing asserted in the conversion cause of action, for, as noted, these claims may be fully pursued under plaintiffs' breach of contract theory.

### Breach of Contract Claims

■ Plaintiffs' allegation of inadequate promotion of their book by defendant cannot be resolved on this motion. There are still substantial controversies as to certain facts relevant to the test formulated in *Zilg v. Prentice-Hall, Inc.*, 717 F.2d 671, 680–681 (2d Cir.1983) for determining if a publisher has breached its contractual obligation to promote a certain book. These controversies include issues such as whether the size of the initial printing was sufficient in light of the subject matter and likely audience of the book (*see Zilg, supra* at 680); whether defendant had a marketing plan for the book; whether the amount spent on promoting the book was sufficient; and whether the book should have been initially printed in foreign languages. These issues must be resolved before it can be determined whether defendant's initial printing and promotional efforts were adequate or whether later efforts were not undertaken because of a good faith business judgment. *See Zilg, supra* at 681.

Plaintiffs' other allegations of breach of contract also cannot be resolved on this motion. There are still substantial controversies as to certain facts including the following: whether certain deductions from plaintiffs' royalty accounts were permissible under paragraph 25 of the publishing agreement and if not, whether defendant has wrongfully withheld payment; whether the delay in accounting to plaintiffs for the sale of rights to the Nostalgia Book Club was unreasonable; whether defendants unreasonably delayed sending plaintiff Fraser a certified statement of his royalty account;

and whether royalty statements were sent to plaintiffs within the time periods specified by the contract.

### Fraud Claims

■■■■ We grant plaintiffs leave to amend their complaint as to the fraud claim because the complaint does not comply with Fed.R.Civ.P. 9(b)'s requirement that "the circumstances constituting fraud or mistake shall be stated with particularity." Although plaintiffs have pleaded the elements of fraud, they have not stated the time, place and manner in which the allegedly false representations were made, nor the identity of the person making the alleged misrepresentation. *See Armstrong v. McAlpin*, 699 F.2d 79, 88–93 (2d Cir. 1983); *Altman v. Knight*, 431 F.Supp. 309, 314 n. 4 (S.D.N.Y.1977). This pleading is therefore insufficient because it fails to inform defendant of the claim against him and the acts relied upon as constituting the fraud charge. *See Felton v. Walston and Co., Inc.*, 508 F.2d 577, 581 (2d Cir.1974). If plaintiffs successfully amend their claim of fraud, it must be asserted as an alternative to the breach of contract claims because the fraud alleged here, if established, would serve to rescind the entire contract. It is a settled principle of New York law "that a party may not offer proof of prior oral statements to alter or refute the clear meaning of unambiguous terms of written, integrated contracts to which assent has voluntarily been given." *Meinrath v. Singer Co.*, 482 F.Supp. 457, 460 (S.D.N.Y. 1979), *aff'd*, 697 F.2d 293 (2d Cir.1982). *See Lee v. Joseph E. Seagram & Sons, Inc.*, 552 F.2d 447, 451 (2d Cir.1977) (citing cases). As evidenced by the disclaimer contained in the contract between plaintiffs and defendant, this contract contains the whole understanding between the parties. Contract ¶ 35. Therefore, proof of fraud may only be offered to rescind the entire contract, not to change the meaning of the terms of the contract. *Meinrath, supra* at 460–461.

### Punitive Damages Claim

■■■ In light of the foregoing, we must deny plaintiffs' demand for punitive damages except as it may apply to the fraud claim. Even if plaintiffs could show that defendant intentionally or maliciously breached its contractual duties, it "has always been held that punitive damages are not available for mere breach of contract, for in such a case only a private wrong, and not a public right, is involved." *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 386 N.Y.S.2d 831, 833, 353 N.E.2d 793, 795 (1976); *accord Edison v. Viva International, Ltd.*, 70 A.D.2d 379, 421 N.Y.S.2d 203, 207 (1st Dept.1979). Therefore, as a matter of law, plaintiffs could be awarded punitive damages for the alleged fraud but not for the alleged breach of contract.

For the foregoing reasons, defendant's motion for summary judgment is granted in part and denied in part pursuant to Fed. R.Civ.P. 56(d). Plaintiffs are hereby given until July 18, 1984 to file an amended complaint as to their fraud claim and to supplement their submissions on the racial discrimination claim. If these materials are not filed by such date, the dismissal of these claims will be final. The parties are directed to attend a pretrial conference on July 27, 1984 at 9:30 A.M. in Room 307.

SO ORDERED.