David T. THOMPSON and Thompson Communications Companies, Inc., Plaintiffs,

v.

Davor G. GJIVOJE, Defendant.

No. 85 Civ. 8928 (RWS).

United States District Court, S.D. New York.

July 12, 1988.

Cohn & Blau, New York City (Frederick H. Cohn, of counsel), for plaintiffs.

Anderson Russell Kill & Olick, P.C., New York City (R. Mark Keenan, Rosemary H. Yeoh, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant Davor G. Gjivoje ("Gjivoje") has moved for summary judgment pursuant to Rule 56, to dismiss the three claims of plaintiffs David T. Thompson ("Thompson") and Thompson Communications Companies, Inc. ("TCC") For the reasons set forth below, the motion is granted.

*Facts*

Gjivoje was employed by TCC from late 1980 or early 1981 until April 1, 1983 as president of that concern. Among TCC's holdings, and of primary concern to Gjivoje, was a concern which ultimately became known as Networld. Networld was involved with the representation in the United States of foreign providers of land based travel services (such as hotel, ground transportation, etc.) primarily to United States group operators.

In 1983, due to TCC's financial problems, Gjivoje resigned from the firm. Shortly thereafter, however, Gjivoje contracted

with Thompson to buy Networld—to be called New Networld. According to Gjivoje, the sale was suggested by Thompson in order to reduce TCC's financial difficulties.

The contract for sale was executed on April 27, 1983. The provisions in dispute in this action pertain to the purchase price, an agreement not to compete for six months, and an agreement on the part of Gjivoje to invest at least $100,000 in New Networld.[1]

*Discussion*

In considering a motion for summary judgment a court is to determine whether there is a genuine issue of fact necessitating trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The first disputed provision, that relative to the purchase price, states as follows:

[New] Networld to pay to [Thomspon] ⅕ of [New] Networld's annual pre-tax profits (until $300,000 is paid) in exchange for [Thompson's] regular consulting services as will be agreed upon between [Gjivoje], on behalf of the new Networld Company, and [Thompson].

According to Gjivoje, this provision clearly conditions payment on New Networld's making a profit and on Thompson's continuing consulting services. Since, he claims, New Networld has not made such a profit and Thompson has not rendered his services, payment of the price is not owing.

Thompson, on the other hand, contends that Gjivoje has indeed made a profit, but that the profit has been concealed by the creation of a second entity. According to Thompson, after contracting for the sale of Networld, Thompson incorporated Networld into Networld Incorporated and then created a second entity called Networld Communications Incorporated. Thompson claims that assets were shifted between the companies thereby creating a paper loss. In his affidavit, he further asserts that this court should look to the aggregate profits of Gjivoje's companies. However, nothing in the contract forbids Gjivoje from starting another company, and Thompson's claim here is strictly for breach of contract. No fraud has been alleged.

 Since Thompson has presented no contested facts with respect to the breach of contract—that is, he does not claim that Networld, Inc. *per se* made a profit—summary judgment will be granted. Thompson, however, will be granted leave to amend his complaint if he can substantiate a claim of fraud.

The second disputed provision states:

[Gjivoje] to continue consulting services for TCC in the Business Development area. [Gjivoje] and Networld will support all existing TCC business and will not for a period of 6 months from the termination of this contract pursuant to paragraph 8 solicit or accept business from existing TCC clients except on behalf of TCC, *provided*, however, that if TCC fails to make any payment to [Gjivoje] within 15 days of the due date hereunder then [Gjivoje] will be relieved of this noncompete agreement if he, for his part, agrees to pay commissions to TCC for any business obtained by Networld from companies who are clients of TCC on the date this agreement is signed in the same amounts and on the same schedule as TCC would have paid [Gjivoje] under this agreement, such commissions payable to TCC to be reduced by all commissions payable to [Gjivoje] from TCC. (emphasis in original).

Soon after this provision was adopted, Gjivoje began negotiations with Mastercard International Incorporated concerning a project encompassing a TCC feasibility study for a new electronic payment instru-

---

**1.** A cause of action initially asserted by Thompson, that the sale was fraudulently induced, has been voluntarily discontinued.

ment known as the universal travel voucher. However, since TCC had competing accounts, it was agreed that Gjivoje and Networld take the account. Thus, the parties signed the following March 2, 1984 letter agreement modifying the contract:

This is to confirm that contrary to our agreement of April 1983, you have specifically asked in the presence of Marion Haller, that I (i.e. Networld) take on the Universal voucher project directly with MasterCard and sign with them an agreement to that effect.

The parties disagree as to the effect this agreement has on the original contract. Thompson, in his amended complaint, asserts that he is due commissions on the MasterCard deal under the original agreement. He opposes the motion on that ground.[2]

In addition, Thompson, in his papers responding to this motion, for the first time claims that he was fraudulently misled into signing away the MasterCard account in that Gjivoje did not reveal the true terms of the MasterCard agreement. This claim was not asserted in the amended complaint, and Thompson did not request leave to file a second amended complaint although Gjivoje's answer has been filed for two years. Fraud "must be asserted as an alternative to the breach of contract claims because the fraud alleged here, if established, would serve to rescind the entire contract," here, the entire permission to do business with MasterCard allegedly yielding profits for Thompson. *Fraser v. Doubleday & Co.*, 587 F.Supp. 1284, 1289 (S.D.N.Y.1984) (Sand, J.). Thus, the response will be treated as a motion to amend the complaint.

The Federal Rules of Civil Procedure provide that leave to amend should be freely given if there is no resulting prejudice to the defendant. Rule 15, Fed.R.Civ.P.; *see*

*Argus Inc. v. Eastman Kodak Co.*, 552 F.Supp. 589, 602 (S.D.N.Y.1982). However, such leave should not be granted when the amendment is futile or lacking in merit. *Love v. New York State Department of Environmental Conservation*, 529 F.Supp. 832, 845 (S.D.N.Y.1981). Thompson presents no evidence to substantiate a fraud claim. In fact, his affidavit suggests that he is more concerned with the commissions the MasterCard business would generate than holding the business for himself. This would echo his initial complaint. Based on this and based on the fact that Thompson is an experienced businessman, giving this court no reason to believe that Gjivoje was in a superior negotiating position with regard to this so-called waiver, leave to amend the complaint and add a cause of action for fraud with respect to the MasterCard agreement[3] will not be granted.

Thus, the question becomes whether there is an issue of fact as to whether commissions are due. Although these agreements taken together are not a model of clarity, one thing is plain: the obligation to pay commissions is conditioned on TCC's failure to make payments due Gjivoje. According to Gjivoje, TCC never failed to make such payments, and Thompson has made no contrary claims. This is true even if, as Thompson asserts the letter agreement did not cancel out the April 1983 sale agreement with respect to MasterCard. Since there is no dispute regarding whether the condition triggering the payment of commissions has occurred, there is no triable issue of fact as to that matter.

The next provision in dispute involves Gjivoje's promise to invest capital in Networld. The agreement states:

---

**2.** Additionally, in his claim for the purchase price Thompson contests the fact that Networld Communications may be doing business with MasterCard because it would, he claims, relieve Gjivoje of the noncompete agreement. However, that agreement is between Thompson and Gjivoje personally, as well as on behalf of Networld. It is not Networld alone that is covered, and thus Networld Communications would fall within its terms.

**3.** Moreover, in Thompson's Local Rule 3(g) statement he states that "Four causes of action were originally pleaded, one in fraud and three in breach of contract. The fraud action has been discontinued." Thus Thompson himself appears to be treating this as a breach of contract action as opposed to a fraud claim.

[Gjivoje] agrees to invest at least $100,-000 cash in his new Networld company on or before May 30, 1983, failing which all rights transferred shall revery to TCC without further obligation to either party.

The parties do not dispute the facts surrounding the contest with respect to this provision: Gjivoje obtained a $55,000 loan and obtained $45,000 line of credit from Chemical Bank, and invested the cash in the company.

Thompson claims that this form of financing did not constitute the cash investment called for under the contract. He thus maintains that Networld should revert back to TCC. Gjivoje, on the other hand claims that the financing he obtained satisfied his obligation. He further claims that Thompson was aware of the type of financing obtained and approved it. His proof for this proposition is a May 31, 1983 letter he sent to Thompson and one Denis Karp. The letter states:

> Just a short note to let you know that Chemical Bank has approved a $100,000 loan for Networld, Inc.
>
> The First portion of this amount will be credited tomorrow to Networld's Operation Account. Therefore, I will be able to give [Denis Karp] a check immediately for Networld's advances paid by TCC during the month of May.

While this note does nothing to prove that Thompson was aware of the exact terms of Gjivoje's financing, it does substantially state the facts. Both parties seem to agree that the purpose of the investment provision was to ensure that Gjivoje had sufficient interest in the concern to prevent his abandoning it. In order to obtain $55,000 cash and $45,000 credit—presumably for investment in the company as needed—Gjivoje pledged his personal securities and obtained a second mortgage on his home. This indicates a personal stake on the part of Gjivoje such that abandonment was unlikely. Since $100,000 worth of financing was obtained, part in cash and part in ready cash, Gjivoje has substantially performed his part of the bargain. Therefore, no cause of action has been made out with respect to this provision and summary judgment will be granted.

*Conclusion*

Gjivoje's motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P., is granted. Thompson is granted leave to amend his complaint within thirty (30) days with respect to his claim for the purchase price.

It is so ordered.