**GLOBAL VIEW LTD. VENTURE CAPITAL, Plaintiff,**

v.

**GREAT CENTRAL BASIN EXPLORATION, L.L.C., Merit Capital Group, LLC, Harvey M. Bloch, and Alfred Salazar, Defendants.**

No. 03 Civ. 0026(VM).

United States District Court, S.D. New York.

Sept. 24, 2003.

David G. Samuels, Perlman & Perlman, New York City, for plaintiff.

## DECISION AND ORDER

MARRERO, District Judge.

In the loan dispute at issue in this action, the lender sued the borrower and related parties for, among other things, fraud and breach of contract. Three of four defendants (all but the borrower) (collectively "Defendants") moved to dismiss the complaint. For the foregoing reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

In December 2000, plaintiff Global View Ltd. Venture Capital ("Global View"), a Bahamian corporation, entered into a Loan Agreement with Great Central Basin Exploration, L.L.C. ("GCBE"), an Illinois limited liability company. Compl. ¶ 10. Global View agreed to lend GCBE $1.85 million for the purpose of acquiring natural gas interests in Illinois, and acquiring and equipping production facilities to transport natural gas. Compl. ¶¶ 13, 16. The loan carries an interest rate of eleven (11) percent and is scheduled to mature on December 13, 2003. Compl. ¶¶ 14–15. No portion of the principal has been repaid. Compl. ¶ 14.

The loan required that Great Central Basin Oil & Gas Co., LLC ("GC Indiana"), an Indiana limited liability company, transfer a twenty-five percent membership interest to GCBE. Compl. ¶ 24. This transfer occurred by a separate agreement. Compl. Ex. B. Previous to the transfer, GC Indiana and GCBE were owned entirely by the same three companies: United Petroleum, LLC ("United"), Sunseeker

Holdings, Ltd. ("Sunseeker"), and Adco Holdings Corporation ("Adco"). *See* Compl. Ex. B, at 1; Defendants' Memorandum of Law in Support of Motion to Dismiss ("Defs.Mem.") at 2. Global View understood that the transfer would increase GCBE's assets and thereby provide greater security for repayment of the loan. Compl. ¶ 39.

Defendant Merit Capital Group, LLC ("Merit") is a New York limited liability company and the designated manager of GCBE. Compl. at ¶ 3. Defendants Alfred Salazar ("Salazar") and Harvey Bloch ("Bloch") are shareholders of Merit. *See* Defs. Mem. at 2. Salazar is the sole shareholder of Adco, and Bloch is the sole shareholder of Sunseeker. *Id.*

Global View alleges that Bloch and Salazar knowingly made several misrepresentations to induce Global View to enter the Loan Agreement, and that those misrepresentations caused Global View to lose money. Compl. at ¶ 30. For example, Global View alleges that Bloch and Salazar represented that: (1) GCBE had sufficient capital to acquire and develop the natural gas interests; (2) that the acquisition would occur in early 2001; and (3) that Bloch and Salazar would make financial reports available to Global View. Compl. ¶¶ 31–45.

The Loan Agreement requires that GCBE make available to Global View, upon reasonable request, certain financial information. Compl. ¶ 18. It also requires GCBE to make certain periodic financial disclosures to Global View. Compl. ¶¶ 19, 20. Despite Global View's numerous attempts to obtain financial information, Global View alleges that Defendants have refused to comply with these disclosure obligations. Compl. ¶¶ 46–62.

Global View asserts the following causes of action: (1) breach of the Loan Agreement against GCBE for failing to comply with the disclosure obligations, Compl.

¶¶ 75–87; (2) tortious interference with contract against Bloch, Salazar and Merit for intentionally preventing GCBE from complying, Compl. ¶¶ 88–94; (3) fraud and (4) fraudulent inducement against Bloch and Salazar for making knowingly false statements which induced Global View to make the loan, Compl. ¶¶ 95–111; (5) conversion against Bloch, Salazar and Merit for converting GCBE's money for their own benefit and to the detriment of Global View, Compl. ¶¶ 112–15; and (6) fraudulent conveyance against all Defendants for transferring money from GCBE with the intent to hinder the repayment to Global View, Compl. ¶¶ 117–26. Global View seeks over $1.85 million in compensatory damages, as well as punitive damages. Compl. at 27. Finally, Global View seeks an injunction to compel Defendants to perform their disclosure obligations under the Loan Agreement. Compl. ¶¶ 127–131.

Defendants Merit, Bloch, and Salazar move to dismiss the complaint for failure to state a claim.

## II. STANDARD FOR A MOTION TO DISMISS

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (citation omitted). The Court may not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding the motion, the Court may consider documents attached to the complaint as exhibits. *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

## III. *DISCUSSION*

### A. *USURY*

■ Defendants argue that the complaint should be dismissed in its entirety because the Loan Agreement is usurious. Under New York law, charging more than twenty-five (25) percent annual interest is second-degree criminal usury, *see* N.Y. Penal Law § 190.40, and such contracts are void *ab initio*. *See Fareri v. Rain's Int'l Ltd.*, 187 A.D.2d 481, 589 N.Y.S.2d 579, 580 (App.Div. 2d Dep't 1992); *see also Hufnagel v. George*, 135 F.Supp.2d 406, 407 (S.D.N.Y.2001). Even though the Loan Agreement only charges eleven (11) percent interest, Defendants assert that Global View "effectively acquired," the twenty-five (25) percent interest of GC Indiana which GCBE obtained. Defs. Mem. at 9. That interest is estimated to be worth over $1.7 million. Combining the $1.7 million "bonus" with the eleven (11) percent interest rate, Defendants assert that the loan is usurious. Global View denies it received any "bonus," and argues that the GC Indiana interest was transferred only to GCBE, not Global View, and that the transfer was only for the purpose of providing security.

The parties' disagreement stems from a dispute as to meaning of the following clause in the agreement transferring the twenty-five (25) percent interest in GC Indiana to GCBE:

> In consideration for the agreement by [GCBE] to borrow the Loan amount from Global View ... [GC Indiana and its owners] each hereby consents and agrees to the payment by [GCBE] to Global View of all or any portion of the membership distributions allocable to

[GCBE's interest], on the terms and conditions set forth in this Agreement Compl. Ex. B, at 2. Only a strained reading of this language would indicate an outright transfer of the interest, or the distributions, to Global View, especially because Global View was not even a party to the transfer agreement. Moreover, one would certainly expect that if the parties intended to include a large bonus payment – nearly equal to the principal amount of the loan – the payment would be indicated more plainly than above. There is no mention of the alleged "bonus" in the Loan Agreement between Global View and GCBE.

The more natural and compelling reading of the language quoted above is that GCBE is authorized to pay "all or any" of its distributions to Global View, in case that payment becomes necessary to satisfy the loan obligation. The Court notes additionally that Defendants have not argued that Global View has actually received any of the GC Indiana distribution money from GCBE.

In any event, there is at least a fact issue as to the parties' intentions. At this stage, with all reasonable inferences favoring Global View, the Court concludes that there is an insufficient basis to support a finding of usury as a matter of law justifying dismissal of the complaint.

### B. *STATUTORY IMMUNITY*

Defendants argue that they have statutory immunity, under Illinois law, from individual liability for the torts of the limited liability companies of which they are members.[1] Defendants recognize that Global View's pleadings allege torts which are "separate and distinct from any misconduct on behalf of" GCBE, Compl. ¶¶ 92,

---

1. In Merit's case, the immunity is asserted by virtue of its role as manager of GCBE, a limited liability company.

478

100, 109, 115, 125, but they argue that these conclusory statements fail the heightened pleading standard, under New York law, for claims seeking to hold corporate officials personally responsible for a corporation's torts. The Court disagrees.

■ Heightened pleading requirements for particular state causes of action do not apply in federal court. *See Stirling Homex Corp. v. Homasote Co.*, 437 F.2d 87, 88 n. 2 (2d Cir.1971). The Court concludes that, because the complaint alleges torts independent from the corporate torts, the pleadings are sufficient and the issue of statutory immunity is not implicated.

## C. PARTICULARITY UNDER RULE 9

■ Defendants argue that the fraud-based claims fail to satisfy the strict pleading requirement of Federal Rule of Civil Procedure 9(b), which states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). "To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989) (citing *Goldman v. Belden*, 754 F.2d 1059, 1069–70 (2d Cir. 1985)). Mere "conclusory allegations to the effect that defendant's conduct was fraudulent ... are insufficient." *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir.1971).

The Second Circuit has "construed Rule 9(b) strictly in order to minimize strike suits, to protect defendants ... from harm to their reputation resulting from ungrounded actions, and to give defendants notice of the precise conduct in issue."

*Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir.1982). However, the Circuit Court has recognized "an obvious tension between the requirements of Rule 9(b) and the practicality of alleging in elaborate detail facts constituting fraud prior to discovery," *id.*, as well as a tension with Rule 8, which only requires a short and concise statement of the claims. *See Felton v. Walston & Co.*, 508 F.2d 577, 581 (2d Cir.1974).

■ With these considerations in mind, the Court concludes that the allegations in the complaint with respect to the claims of fraud and fraudulent inducement are sufficient for purposes of Rule 9(b), but that the allegations with respect to the claim for fraudulent conveyance lack sufficient particularity.

The complaint explains that GC Indiana issued a written Business Plan in November 2000, containing several representations about the health and prospects of that company. Compl. ¶ 37. For example, the Business Plan stated that a GC Indiana had already secured a contract with a particular natural gas buyer. Compl. ¶ 43. The complaint alleges that this, and many other statements, were false. Compl. at 45. Defendants Bloch and Slazar allegedly told Global view "on more than one occasion in late 2000 and thereafter" that the Business Plan was accurate. Compl. ¶ 44. Global View asserts that this Business Plan was important in its considerations because GCBE was to obtain a twenty-five (25) percent interest in GC Indiana, as a means to secure repayment of the loan. ¶ 38. The Court concludes that, at this stage in the litigation, these descriptions sufficiently put the Bloch and Salazar on notice as to the conduct at issue and that the requirements of Rule 9(b) have been met, for purposes of the claims of fraud and fraudulent inducement.

By contrast, the factual allegation underlying the claim of fraudulent conveyance is extremely vague:[2]

Defendants Bloch and Salazar have caused the transfer by Great Central, to Bloch, Salazar, and Merit, of monies and assets of Great Central, in an amount in excess of $75,000, without fair consideration (the "Transfer").

Compl. ¶ 119. The complaint fails to allege either the time of the transfer, the amount of money (except that it was enough for federal diversity jurisdiction), the particular assets transferred, or how the transfer affected GCBE's ability to repay the loan. The Court shall grant Global View leave to amend its complaint to cure this defect within thirty (30) days from the date of this Order; otherwise, this claim will be dismissed with prejudice.

### D. CONVERSION

Under New York law, "[i]t is well settled that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Manufacturers Hanover Trust Co. v. Chemical Bank*, 160 A.D.2d 113, 559 N.Y.S.2d 704, 712 (App.Div. 1st Dep't 1990). The plaintiff must demonstrate that he has "legal title or an immediate superior right of possession to the identifiable fund." *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro*, 187 A.D.2d 384, 590 N.Y.S.2d 201, 202 (App. Div. 1st Dep't 1992). "Interference with a right of possession is the essence of a conversion." *Meese v. Miller*, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (App.Div. 4th Dep't 1981).

Defendants argue that Global View does not have the immediate right to possess the allegedly converted funds, at least until the loan is due to be repaid in December 2003. Instead, they argue that only GCBE has the right to possess the money in dispute, and therefore only GCBE would have standing to assert a cause of action for conversion. Global View responds that, because of GCBE's breach of the Loan Agreement, those funds belong to Global View. The Court agrees with Defendants that Global View has not stated a cause of action for conversion.

Defendants are correct that GCBE is the only party which would have standing to assert a conversion cause of action. Global View's own complaint states, "Defendants Bloch, Salazar and Merit thereby improperly converted the monies and assets *of Great Central* [GCBE] for their own personal benefit...." Compl. at 114 (emphasis added). For purposes of a conversion claim, the Court will not deem a plaintiff to have immediate possessory rights over money where that money represents damages in contract. This conclusion accords with the well-settled principle that, "to sustain a conversion claim, a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." *Fraser v. Doubleday & Co.*, 587 F.Supp. 1284, 1288 (S.D.N.Y.1984); *see also PKO Television, Ltd. v. Time Life Films, Inc.*, 169 A.D.2d 582, 564 N.Y.S.2d 434, 435 (App.Div. 1st Dep't 1991). In *Fraser* and *PKO Television*, the courts dismissed conversion claims which were duplicative of breach of contract claims. *Fraser*, 587 F.Supp. at 1288; *PKO Television*, 564 N.Y.S.2d at

---

**2.** It is settled that a plaintiff asserting a claim of fraudulent conveyance under New York law must also meet the particularity requirements of Rule 9(b). *See Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir.1987).

435. Here, although Global View's conversion claim against Defendants is not duplicative of the breach of contract claim (which is only against GCBE), the conversion claim is nevertheless dependent on the finding that GCBE breached the Loan Agreement. Accordingly, because Global View could not state a cause of action for conversion against GCBE, the Court dismisses, with prejudice, the derivative conversion claim against Bloch, Salazar and Merit.

■ Alternatively, the Court finds that the conversion claim fails because Global View has not specifically identified the allegedly converted funds. To state a cause of action for conversion of money, the money must be "described or identified in the same manner as a specific chattel." *9310 Third Ave. Assocs., Inc. v. Schaffer Food*, 210 A.D.2d 207, 620 N.Y.S.2d 255, 256 (App.Div. 2d Dep't 1994) (internal quotation marks and citation omitted). In other words, the money must be "specifically identified and segregated." *Manufacturers Hanover Trust*, 559 N.Y.S.2d at 712. Here, Global View's complaint merely refers to unspecified "monies and assets ... in an amount in excess of $75,000." Compl. ¶ 114. There is no indication of an identifiable fund or otherwise segregated amount, nor is there any description of the alleged transfer or transfers from which the Court could infer a specifically identified fund of money. Accordingly, on the basis of both grounds stated above, Global View's cause of action for conversion is dismissed with prejudice.

## E. *PUNITIVE DAMAGES*

■ Defendants urge the Court to dismiss Global View's demand for punitive damages because the complaint does not allege that the false GC Indiana Business Plan was directed at the public generally. Defendants cite to *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995), which holds that, when a tort claim arises from the breach of a contract, punitive damages are generally only available if the following elements are met: (1) "defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature ...; (3) the egregious conduct must be directed to plaintiff; and (4) *it must be part of a pattern directed at the public generally.*" *Id.* at 767 (emphasis added).

In spite of the apparently clear holding in *New York University*, this Court has recently recognized that the controlling case law on the "public aim" requirement for punitive damages under New York law is "quite divided, and [that] the task of reconciling these varying interpretations is formidable." *TVT Records v. Island Def Jam Music Group*, 262 F.Supp.2d 188, 194–95 (S.D.N.Y.2003) (footnote omitted). After a thorough review of the "confusi[ng] and contradict[ory]" case law, *id.* at 194, this Court concluded that there was a "a narrow exception to what appears to be an otherwise general requirement that some form of public rights be implicated in a defendant's wrongs." *Id.* at 196. The Court characterized the exception as follows:

> [A]bsent conduct directed at the public in general, punitive damages may be available in a breach of contract claim where the plaintiff establishes a sufficiently high degree of bad faith by the defendant evincing disinguous or dishonest failure to carry out contractual obligations, thus frustrating the plaintiff's rights to an aggravated extent, particularly where bad faith is apparent at or near the outset of the transaction and where the breached obligations are unambiguous.

*Id.*

With this standard in mind, the Court first agrees with Defendants that the com-

plaint does not allege a pattern of conduct directed at the public generally. The complaint states nothing more than that certain defendants showed Global View the GC Indiana Business Plan. There is no allegation that the Business Plan was either widely disseminated, or in any way caused injury beyond the alleged injury to Global View.

The Court also concludes that this case does not fall within the "narrow exception" for particular egregious and dishonest cases. The complaint alleges, essentially, that Defendants made overly positive representations to secure a loan and that those Defendants have not fulfilled their obligations to keep the lender informed. These allegations, even if true, are not of such an egregious nature as to justify imposing punitive damages. *Cf. id.* at 191–93, 196. However, the Court will grant leave for Global View to replead its claim for punitive damages in accordance with the standards articulated here and in the other authorities cited. The claim will be dismissed with prejudice if Global View fails to cure the defect within thirty (30) days of the date of this Order.

## F. *STRIKING PLEADINGS*

■■■ Defendants urge the Court to strike, under Federal Rule of Civil Procedure 12(f), paragraph eight (8) of Global View's complaint, which states:

> This action stems from what is, upon information and belief, the fraudulent, self-dealing, malicious and otherwise outrageous misconduct of Bloch and Salazar, two unscrupulous, unprincipled con artists who have acted in a wanton and malicious matter in their commercial dealings with Plaintiffs.

Compl. ¶ 8.

Under Rule 12(f), the Court is authorized to strike from a pleading any "redundant, immaterial, impertinent, or scandelous matter." Fed.R.Civ.P. 12(f). Mindful that "motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute," *Kounitz v. Slaatten,* 901 F.Supp. 650, 658 (S.D.N.Y.1995) (citation omitted), the Court nevertheless strikes the paragraph. The above-quoted paragraph amounts to nothing more than name calling, and does not contribute to Global View's substantive claims. Whether or not Global View ultimately prevails depends on whether Bloch and Salazar have committed the particular torts alleged, not on whether they are "unscrupulous" people or "con artists."

## IV. *ORDER*

For the reasons discussed above, it is hereby

ORDERED that the motion of defendants Merit Capital Group, LLC ("Merit"), Harvey M. Bloch ("Bloch"), and Alfred Salazar ("Salazar") to dismiss the claims of plaintiff Global View Ltd. Venture Capital ("Global View") for fraudulent conveyance (sixth cause of action) and for punitive damages is GRANTED with leave to replead; and it is further

ORDERED that Global View shall have thirty (30) days from the date of this Order to amend its pleadings to cure the defects with respect to the claims of fraudulent conveyance and punitive damages; and it is further

ORDERED that in the event Global View does not file amended pleadings as authorized herein, the fraudulent conveyance and punitive damages claims will be dismissed with prejudice; and it is further

ORDERED that the motion of defendants Merit, Bloch and Salazar to dismiss Global View's claim for conversion (fifth cause of action) is GRANTED and the

claim is DISMISSED WITH PREJU-
DICE; and it is further

ORDERED that paragraph eight (8) of Global View's amended complaint is stricken in its entirety; and it is finally

ORDERED that the motion of defendants Merit, Bloch and Salazar to dismiss the complaint is, in all other respects, DENIED.

SO ORDERED.