ROBERT EDISON, Respondent, v VIVA INTERNATIONAL, LTD., Appellant.

First Department, October 30, 1979

### APPEARANCES OF COUNSEL

*Richard E. Hahn* of counsel *(Norman Roy Grutman* and *Jewel H. Bjork* with him on the briefs; *Grutman & Schafrann,* attorneys), for appellant.

*Bruce G. Habian* of counsel *(Timothy J. Flanagan* with him on the brief; *Martin, Clearwater & Bell,* attorneys), for respondent.

### OPINION OF THE COURT

MURPHY, P. J.

Defendant Viva International, Ltd. brought this motion to dismiss the four causes of action set forth in the complaint for legal insufficiency (CPLR 3211, subd [a], par 7).

Plaintiff Edison and defendant Viva entered into a letter agreement, dated December 31, 1976, pursuant to which plaintiff agreed to write an article of approximately 4,000 words on "Why Do Men Hate Barbara Walters". This proceeding was brought because the defendant allegedly published the article in content and form substantially different from plaintiff's completed article.

The first cause of action is essentially embodied in paragraphs fourth and fifth, which read as follows:

"FOURTH: On or about the 31st day of December, 1976, plaintiff and defendant, for a valuable consideration, entered into a contract in writing, a copy of which is annexed hereto as Exhibit 'A', in which plaintiff agreed to create, as the sole and original author, an article of about 4,000 words on 'Who Likes or Dislikes Barbara Walters, Men or Women?' and sell said article to defendant for a fee of ONE THOUSAND DOLLARS ($1,000.00).

"FIFTH: Defendant has failed and neglected to perform the conditions of the contract on its part in that defendant accepted the aforesaid article from the plaintiff for publication, materially altered, mutilated, and changed said article, added to, and destroyed the existing content of said article, and with

content different than the article which was the subject matter of the contract between plaintiff and defendant, defendant held plaintiff to be the author of the altered, mutilated and changed article."

The defendant seeks to dismiss the first cause of action on the ground that the plaintiff consented under paragraph 5 of the agreement to any changes defendant might wish to make.

■ A motion addressed to the legal sufficiency of a pleading will fail if, from the four corners of the pleading, factual allegations are discerned which taken together manifest any cause of action cognizable at law. When evidentiary material is considered upon a motion to dismiss for failure to state a cause of action, it is necessary to determine whether the pleader has a cause of action. Unless it be shown that a material fact to be otherwise than is stated by the pleader, then dismissal should not eventuate. *(Guggenheimer v Ginzburg,* 43 NY2d 268, 275.)

■ In *Clemens v Press Pub. Co.* (67 Misc 183, 184), Justice SEABURY succinctly summarized the contractual rights of an author as against his publisher: "The rights of the parties are to be determined, primarily, by the contract which they make, and the interpretation of the contract is for the court. If the intent of the parties was that the defendant should purchase the rights to the literary property and publish it, the author is entitled not only to be paid for his work, but to have it published in the manner in which he wrote it. The purchaser cannot garble it or put it out under another name than the author's; nor can he omit altogether the name of the author, unless his contract with the latter permits him so to do." When read most favorably to the plaintiff, paragraph FIFTH of the complaint states a cause for breach of contract flowing from defendant's material alteration and mutilation of the subject article.

While the first cause thus states a meritorious cause upon its face, the defendant maintains that paragraph 5 of the agreement gives it the right to "edit" or "change" the original article. Paragraph 5 of the agreement reads as follows: "5. We have the right to edit or otherwise change the Work. You agree to make such changes in the Work as we may from time to time reasonably request prior to publication. We are under no obligation to publish the Work in our magazine or otherwise apply the Work to any specific purpose. You hereby agree to our using your name, pseudonym, photograph or other

likeness in connection with the advertisement and promotion of the Work or any adaptations or versions thereof."

In certain instances, a motion to dismiss has been granted where there is a patent discrepancy between a pleading and a contract. *(La Potin v Lang Co.,* 30 AD2d 527.) However, this is not such a case. A contract must be construed according to the custom and use prevailing in a particular trade *(Preminger v Columbia Pictures Corp.,* 49 Misc 2d 363, 367, affd 25 AD2d 830, affd 18 NY2d 659). Hence, evidence should be taken as to the connotation of the words "edit" and "change" in the context of the publishing industry. *(Stevens v National Broadcasting Co.,* 270 Cal App 886, 892.) It is quite possible, as plaintiff intends, that paragraph 5 of the agreement merely permits reasonable modification of the original article but does not allow substantial departure therefrom. *(Granz v Harris,* 198 F2d 585, 589 [FRANK, J. (concurring)].) Furthermore, the second sentence of paragraph 5 of the agreement leaves open the question of whether the defendant should have requested permission from the plaintiff before any changes were made.

Upon this motion to dismiss, this court cannot explore the merits of defendant's argument based upon plaintiff's contractual consent to the publication of the article. This ambiguous contract may only be construed after evidence has been adduced upon a motion for summary judgment or at trial. This same defense, based upon plaintiff's purported consent under paragraph 5, is raised with reference to the second and third causes and must fail at the present time for the same reasons discussed above.

The second cause of action incorporates the first cause of action. The principal thrust of the second cause is found in paragraph EIGHTH, which reads as follows: "EIGHTH: Defendant, by accepting for publication, the article which was the subject matter of the contract between the parties, and by materially altering it, changing it, mutilating it, adding to it and destroying the original content of the article, and by publishing said altered, changed, augmented, mutilated, and destroyed article in its 'VIVA' magazine, negligently and unfaithfully reproduced the work of the plaintiff." Defendant argues that the plaintiff may not maintain the second cause for negligent breach of contract. It further argues that a cause based upon an author's "moral right" may not be entertained in view of the contractual relationship between the parties.

The term "moral right", although recognized in civil law countries, is not mentioned in our Copyright Act, nor is it expressly mentioned in the Universal Copyright Convention which came into force in the United States on September 16, 1955. Nevertheless, a right analogous to "moral right", though not referred to as such, has been recognized in this country and in the common-law countries of the British Commonwealth so that in at least a number of situations the integrity and reputation of an artistic creator have been protected by judicial pronouncements. The express grounds, on which common-law protection has been given, range from copyright to tort. *(Seroff v Simon & Schuster,* 6 Misc 2d 383, 387, affd 12 AD2d 475.)

■ Where, however, the parties have entered into a contract of publication, plaintiff's so-called "moral right" is controlled by the law of contract *(Seroff v Simon & Schuster,* 6 Misc 2d, at p 388; see, also, *Packard v Fox Film Corp.,* 207 App Div 311, 313; 36 NY Jur, Literary Property and Copyright, § 9, p 162). Consequently, plaintiff Edison's moral right to protection has been subsumed in his contractual right to seek redress for the alleged mutilation of his article. Hence, even if the second cause is viewed as expressing a request for relief based upon plaintiff's "moral right", it must be dismissed for its failure to allege a breach of a duty distinct and apart from a breach of contract (cf. *Potter v New York, Ontario & Western Ry. Co.,* 233 App Div 578, 583, affd 261 NY 489). Of course, the second cause cannot sustain an independent cause of action for negligent breach of the subject contract. (Cf. *Stella Flour & Feed Corp. v National City Bank of N. Y.,* 285 App Div 182, 183, affd 308 NY 1023.)

The third cause incorporates the first and second causes of action. The heart of the third cause is found in paragraphs seventeenth and eighteenth of the complaint:

"SEVENTEENTH: The defendant, wrongfully and maliciously intending to injure, defame, and destroy the good name and reputation of the plaintiff as an author in the literary community, and to bring him into public scandal, and disgrace among his peers in the newspaper and literary community, caused it to be believed by those in the literary community and all readers of the article, that the plaintiff had written the entire article published, which was attributed to his authorship, and so published by the defendant.

"EIGHTEENTH: By such publication, different in content and

form than the article which was the subject matter of the contract between the parties, and different in content and form than the article submitted by plaintiff and accepted for publication by defendant, the defendant maliciously intended to ascribe to the plaintiff authorship of said article, to the detriment of plaintiff's reputation in the literary community."

Defendant maintains that this third cause should be dismissed, *inter alia,* because the published article did not defame the plaintiff.

▇ To publish in the name of a well-known author any literary work, the authorship of which would tend to injure an author holding his position in the world of letters, has been held to be libel *(Ben-Oliel v Press Pub. Co.,* 251 NY 250, 256). In the third cause, the plaintiff avers that the defendant published an article *different* in form and content from his original work. To state that the published work was different from the original is not to state that the plaintiff was libeled. (See *D'Altomonte v New York Herald Co.,* 154 App Div 453, 456 [Scott, J., dissenting], mod 208 NY 596.) There is always a possibility that any change in the original work was made for the better rather than the worse. Moreover, a change in the content or form of the plaintiff's original work does not necessarily indicate that the plaintiff was held in disgrace or ridicule by his literary peers.

▇ In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally (CPLR 3016, subd [a]). The plaintiff has attached to the complaint a copy of that portion (1,500 words) of the published work as was allegedly added by the defendant. It is true that this copy of the "added material" becomes part of the complaint (CPLR 3014). However, the complaint does not specify which passages in the "added material" are libelous. A perusal of the "added material" does not reveal which, if any, of the passages cast plaintiff into opprobrium in the literary community. The plaintiff should specify the particular passages in the entire published article that express sentiments and opinions different from his own. Plaintiff should further state how those particular passages have defamed him or otherwise injured his reputation.

If the plaintiff believed that he was libeled by the defendant's use of an inferior writing style in the published article, then he should have so stated in the complaint. Likewise, he

should have indicated whether the stylistic deficiencies applied to all or only part of the changes made by the defendant.

Since plaintiff's papers indicate he may have a good ground to plead libel (CPLR 3211, subd [e]), the motion to dismiss the third cause is granted with leave to replead within 30 days after service of a copy of the order entered hereon with notice of entry.

■ Based on the first three causes of action, the fourth cause seeks punitive damages in the sum of $1,000,000. Suffice it to say that no separate cause of action exists for punitive damages which are but an incident of damages *(Liffman v Booke,* 59 AD2d 687). Moreover, since the first cause does not involve any public right, punitive damages are not properly requested to redress a private wrong. *(Van Valkenburgh, Nooger & Neville v Hayden Pub. Co.,* 33 AD2d 766, affd 30 NY2d 34.)

Accordingly, the order of the Supreme Court, New York County (KORN, J.), entered November 15, 1978, denying defendant's motion to dismiss the complaint for legal insufficiency, should be modified, on the law, by dismissing the second, third and fourth causes of action, with leave to apply at Special Term to replead the third cause within 30 days after service of a copy of the order entered hereon with notice of entry, and as modified, the order should be affirmed, without costs.

SANDLER, LANE, SILVERMAN and ROSS, JJ., concur.

Order, Supreme Court, New York County, entered on November 15, 1978, modified, on the law, by dismissing the second, third and fourth causes of action, with leave to apply at Special Term to replead the third cause within 30 days after service of a copy of this court's order, with notice of entry, and as modified, the order is affirmed, without costs and without disbursements.