[760 NYS2d 13]

Michael Zurakov, Appellant, v Register.Com, Inc., et al., Respondents.

First Department, April 22, 2003

## APPEARANCES OF COUNSEL

*John Blim* of counsel (*Brendan Chao, John G. Jacobs* and *Jay Edelson* on the brief; *Blim & Edelson, LLC, Chao & Edelson, LLC* and *The Jacobs Law Firm, CHTD*, attorneys), for appellant.

*Scott D. Brown* of counsel (*Kenneth A. Plevan* and *Adam Michael Becker* on the brief; *Skadden, Arps, Slate, Meagher & Flom, LLP*, attorneys), for respondents.

## OPINION OF THE COURT

ELLERIN, J.

This appeal raises issues of good faith and fair dealing in contractual relations and deceptive consumer-oriented business acts and practices in the context of the Internet.

Defendant Register.Com, Inc. (with which defendant Forman merged in 1999) provides Internet services, among them the registration of domain names, i.e., unique names for the addresses of Internet Web sites. Pursuant to an online contract, plaintiff paid defendant $35 to register the domain name "Laborzionist.org" in his name for one year and defendant did so. Not stated in the contract is the fact that a domain name newly registered with register.com forwards users to a "Coming Soon" page that contains banner advertisements for register.com and other organizations. A person who types the newly registered domain name into the Internet is brought to a page that reads, "Coming Soon! We recently registered our

domain name at * * * **register.com** the *first* step on the web." There follow directly a list of so-called "Additional Services" and, further down on the page, a display of various advertisements. Looking at the page, it appears that these services are provided by the entity—the "We"—whose domain name forwarded the user to this page, although in fact they are provided by register.com. Similarly, it appears that the advertisements for register.com and for other companies are in some way endorsed by or, at the least, associated with the entity whose domain name forwarded the user to this page. After plaintiff discovered that his newly registered domain name was pointing users to this "Coming Soon" page, he followed defendant's procedures for removing his registered domain name from the page, a process he asserts took several months.

Plaintiff alleges that he bargained for the right to exclusive use and control of the domain name "Laborzionist.org" and that defendant, by the deception of concealing in its Web site and not disclosing in the agreement that it intended to use the name, deprived him of this benefit by usurping the name and using it to direct those who typed in the domain name to defendant's own site, which contained advertising for defendant and others. Thus, plaintiff claims that defendant breached the covenant of good faith and fair dealing implied in every contract by "act[ing] in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement" (*Jaffe v Paramount Communications*, 222 AD2d 17, 22-23 [1996]).

Defendant moved to dismiss the complaint based on a defense established by documentary evidence and for failure to state a cause of action (CPLR 3211 [a] [1], [7]). Defendant argued that it performed the contract, i.e., it registered the domain name "Laborzionist.org" in plaintiff's name; that the contract did not promise plaintiff exclusive use and control of the domain name; and that its policy of placing newly registered domain names on the "Coming Soon" page was fully disclosed in materials found in its Web site, namely, in the text of the "Frequently Asked Questions" (FAQ) and "Help" sections of the Web site, which were prominently posted on or around the date on which plaintiff registered the domain name.

The motion court found, as a matter of law, that plaintiff received "everything he bargained for" under the contract, pursuant to which he paid defendant to register the domain name "Laborzionist.org" in his name. The court ascribed to the word

"register" its ordinary meaning, i.e., make a record of, because the word is not defined in the contract. The court found that, moreover, the word "control" never appears in the contract. The court also cited, although without explaining its significance, a provision permitting defendant to "suspend, cancel, transfer or modify [plaintiff's] use of the Services at any time, for any reason, in [defendant's] sole discretion." On appeal, defendant contends that this provision shows that the express terms of the contract give plaintiff no exclusive right to control the domain name.

There is no question that the instant contract does not in express terms grant plaintiff control over the domain name or the exclusive right to use the name. However, the benefit to plaintiff of his contract with defendant would be rendered illusory if the effect of registering the domain name in his name were merely to have the domain name placed next to his name in some official record, as the motion court found, and not to grant him exclusive use and control of it (*see Blandford Land Clearing Corp. v National Union Fire Ins. Co.*, 260 AD2d 86, 94 [1999] ["the courts will not adopt an interpretation that renders a contract illusory when it is clear that the parties intended to be bound thereby"]). Moreover, even if the paragraph cited by the motion court accorded defendant the discretionary right to use plaintiff's domain name, it did not insulate defendant from the duty of good faith and fair dealing (*see Cross & Cross Props., Ltd. v Everett Allied Co.*, 886 F2d 497, 502 [1989] ["contracting parties' fields of discretion under a contract are bounded by the parties' mutual obligation to act in good faith"]).

With respect to whether the contract conferred upon plaintiff the exclusive right to control his newly registered domain name, the custom and usage of "registration" of a domain name in the Internet context is certainly more relevant than the literal definition of "registration" found in the dictionary (*see Edison v Viva Intl.*, 70 AD2d 379, 383 [1979] ["A contract must be construed according to the custom and use prevailing in a particular trade"]; *Paz v Singer Co.*, 151 AD2d 234, 235-236 [1989] [existence of express contract does not preclude attempt by plaintiff to demonstrate right of possession to certain photo negatives "by virtue of the implicit understanding of the parties with respect to the custom and usage of the trade"]; *Horby Realty Corp. v Yarmouth Land Corp.*, 270 App Div 696, 697 [1946] ["Parol evidence is admissible to explain the meaning which custom or usage has given to words or terms as used in

any particular trade or business or in any particular locality"]). Defendant itself incorporated custom and usage into the contract in a provision that permits it to "suspend, cancel, transfer or modify [plaintiff's] domain name registration" in certain circumstances, such as plaintiff's use of his domain name "in contradiction to either applicable laws or customary acceptable usage policies of the Internet."

Indeed, the exclusiveness of the use of a registered domain name is already a familiar concept in the law (*see e.g. Name.Space, Inc. v Network Solutions, Inc.*, 202 F3d 573, 587 [2000] ["Currently, Name.Space is free to use any of an infinite possible number of second-, third and fourth-level domains as long as it has not previously been registered"]; *Sallen v Corinthians Licenciamentos LTDA*, 273 F3d 14, 19 [2001] ["anyone wishing to obtain a second level domain name may, for a fee, enter into a registration agreement with a domain name registrar, thereby acquiring exclusive rights to that second level domain"]; *PurCo Fleet Servs., Inc. v Towers*, 38 F Supp 2d 1320, 1321 n 1 [1999] [registration of a domain name "gives the registering entity the exclusive right to use the domain name as an identifier for an Internet web site"]; *Zippo Mfg. Co. v Zippo Dot Com, Inc.*, 952 F Supp 1119, 1121 n 3 [1997] ["Once a domain name is registered to one user, it may not be used by another"]). Thus, whether "registration" in the context of Internet domain names confers exclusive use and control presents a fact question that should not have been decided upon a motion to dismiss (*see Edison, supra*).

■ A prima facie case of deceptive practices pursuant to General Business Law § 349 requires a showing that defendant's acts are directed to consumers, that they are deceptive or misleading in a material way and that plaintiff has been injured thereby (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 25-26 [1995]). A "deceptive act or practice" is a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*id.* at 26). Plaintiff contends that the disclosure of defendant's practice of pointing a newly registered domain name to the "Coming Soon" page was not contained in the contract but instead was buried in hundreds of pages in defendant's Web site, and that a reasonable consumer could not be expected to scour defendant's Web site to find these disclosures, which consisted of but a few sentences. Defendant argues that a reasonable consumer would have looked in the Web site because neither the contract nor the registration pro-

cess provided any information but only took information from the consumer. Defendant also contends that the subject headings in the Web site would have directed a reasonable consumer to those sites that contained the disclosures.

However, the contract provides a good deal of information on subjects relevant to a consumer's desire to register a domain name, such as "Domain Name Registration, Administration, and Renewal Services," "Electronic Mail," "Domain Manager," "Changes to this Agreement or to Additional Rules or Policies," "Information and Its Use," "Ownership of Data," "Limitation of Liability," "Representation and Warranties," "Governing Law," and "Notices." Moreover, the contract states that it is the entire agreement governing the parties' relationship with respect to the domain name. It reads, "This Agreement as well as any additional rules and policies, together with all modifications thereto, constitute the complete and exclusive agreement between you and register.com concerning your use of the Services, and supersede and govern all prior proposals, agreements, or other communications." The "current list of additional rules and policies," available via a click of the mouse, contains no rules or policies relevant to any issue in this case.

Thus, the record is inconclusive as to whether a reasonable consumer would bother to look in the Web site at all, especially since the contract purports to be fully integrated (*see Leon v Martinez*, 84 NY2d 83, 88 [1994] ["Under CPLR 3211 (a) (1), a dismissal is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law"]). In addition, since there is no documentary or other evidence in the record that establishes that there are only a few pages containing information relevant to domain name registration, the record is inconclusive as to whether a reasonable consumer acting reasonably and looking in the Web site would have come across the disclosures of defendant's practice of pointing the user of a new domain name to the "Coming Soon" page. A record that is inconclusive as to whether a reasonable consumer might be misled precludes summary dismissal (*see Oswego Laborers', supra* at 27; *see also Gaidon v Guardian Life Ins. Co.*, 94 NY2d 330, 345 [1999] ["The issue before us is not whether, as a matter of law, reasonable consumers would be misled in a material way, but whether that prospect is enough to create a question of fact * * * or to state a claim* * * "]).

As to the materiality of the deception, General Business Law § 349 "does not require businesses to ascertain consumers' in-

dividual needs and guarantee that each consumer has all relevant information specific to its situation. The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information" (*Oswego Laborers', supra* at 26). Given plaintiff's claim that the essence of his contract with defendant was to establish his exclusive use and control over the domain name "Laborzionist.org" and that defendant's usurpation of that right and use of the name after registering it for plaintiff defeats the very purpose of the contract, plaintiff sufficiently alleged that defendant's failure to disclose its policy of placing newly registered domain names on the "Coming Soon" page was material.

In alleging that he was deprived of the essence of his bargain, i.e., the right to exclusive use of the domain name, plaintiff showed a "causal connection between some injury to [himself] and some misrepresentation [or omission] made by defendants" (*Small v Lorillard Tobacco Co.*, 252 AD2d 1, 15 [1998], *affd* 94 NY2d 43 [1999]). That he paid for the registration of the domain name is sufficient to demonstrate damages (*see Batas v Prudential Ins. Co. of Am.*, 281 AD2d 260, 261 [2001] ["Although plaintiffs sustained no out-of-pocket costs, actual injury is sufficiently alleged in the nonreceipt of promised health care [under the agreement], for which restitution of premiums paid may be an appropriate remedy"]).

The motion court properly dismissed plaintiff's claim for unjust enrichment since there is no dispute that a written contract exists or that it covers the subject matter of plaintiff's action (*see Clark-Fitzpatrick, Inc. v Long Is. RR. Co.*, 70 NY2d 382, 388 [1987]).

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered July 27, 2001, which granted defendants' motion to dismiss the complaint, should be modified, on the law, so as to reinstate plaintiff's claims for breach of implied covenant of good faith and fair dealing and for deceptive practices pursuant to General Business Law § 349, and otherwise affirmed, without costs.

Nardelli, J.P., Mazzarelli, Sullivan and Marlow, JJ., concur.

Order, Supreme Court, New York County, entered July 27, 2001, modified, on the law, so as to reinstate plaintiff's claims for breach of implied covenant of good faith and fair dealing

and for deceptive practices, and otherwise affirmed, without costs.