(March 8, 2005)

█ NEWS AMERICA MARKETING, INC., Respondent, v LEPAGE BAKERIES, INC., Appellant. [791 NYS2d 80]—

Judgment, Supreme Court, New York County (Barbara R. Kapnick, J.), entered December 22, 2003, which awarded plaintiff damages in the total amount of $132,436, unanimously affirmed, without costs. Appeal from order, same court and Justice, entered on or about December 4, 2003, which granted plaintiff's motion for summary judgment, unanimously dismissed, without costs, as subsumed within the appeal from the judgment.

Defendant seeks to avoid payment of $95,645.75 for advertising materials printed by plaintiff on the ground that the disputed sum was paid to defendant's agent, nonparty McDonald Communications, which subsequently declared bankruptcy. The advertising insert orders and invoices received by defendant from plaintiff are addressed to McDonald Communications "AS AGENT FOR Le Page Bakeries." Thus, it is clear from these documents that McDonald acted as the agent for a disclosed principal, which is responsible to make payment for goods and services purchased by its agent within the exercise of the agent's express or implied authority (*Tobron Off. Furniture Corp. v King World Prods.*, 161 AD2d 355, 356 [1990]).

The rule is firmly established that "an agent for a disclosed principal 'will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal' " (*Savoy Record Co. v Cardinal Export Corp.*, 15 NY2d 1, 4 [1964], quoting *Mencher v Weiss*, 306 NY 1, 4 [1953]; *see also Yellow Book of NY v DePante*, 309 AD2d 859 [2003]). There is no evidence proffered to indicate that McDonald agreed to assume defendant's liability. Defendant nonetheless seeks to elude established precedent, arguing that the custom and usage of the advertising industry has evolved to embrace the concept of "sequential liability," whereby "the agency is solely liable for payment of all media invoices if the agency has been paid for those services by the advertiser."

The issue confronting this Court is the purely legal question of whether the consequences of a default by an agent, acting for a disclosed principal, should be borne by the principal or the vendor engaged by the agent to supply goods and services to the

principal. Generally, principals are liable for the acts of their agents performing within the scope of their apparent authority. As noted in *American Socy. of Mech. Engrs., Inc. v Hydrolevel Corp.* (456 US 556, 566 [1982]): "a principal is liable for an agent's fraud though the agent acts solely to benefit himself, if the agent acts with apparent authority. Similarly, a principal is liable for an agent's misrepresentations that cause pecuniary loss to a third party, when the agent acts within the scope of his apparent authority." (Citations omitted.)

To overcome the established rule that a creditor is generally constrained to seek payment only from the agent's principal (*see Stoner Broadcasting of N.Y. v K.L. & Spitler, Inc.*, 87 AD2d 909 [1982]), defendant offers the affidavit of an expert witness, who opines that the custom and usage of the advertising industry supports "sequential liability." The expert states, "Sequential liability would endorse the fact that when the advertiser pays the agency it has no further liability to the media entity."

The proffered expert testimony must be rejected on several grounds. What defendant misapprehends is that evidence of current industry practice is only "admissible to explain the meaning of terms used in any particular trade, when their meaning is material to construe the contract" (*Smith v Clews*, 114 NY 190, 193 [1889]). For example, in *Zurakov v Register-.Com, Inc.* (304 AD2d 176, 179 [2003]), a case relied upon by defendant, the question confronting this Court was the meaning to be attributed to the term "registration" as it applied to an Internet domain name. Similarly, in *Paz v Singer Co.* (151 AD2d 234, 235-236 [1989]), we noted that a photographer who provided prints to the defendant under an express agreement was not barred from attempting to establish, "by operation of law or by virtue of the implicit understanding of the parties with respect to the custom and usage of the trade," that ownership of the negatives, as to which the contract was silent, vested in the photographer.

The matter at bar involves no contractual ambiguity or omission, only a well-settled question of law; thus, defendant's assertion that a "contract must be construed according to the custom and use prevailing in a particular trade" (*Edison v Viva Intl.*, 70 AD2d 379, 383 [1979]) is inapt. Furthermore, the proffered testimony purports to decide a legal issue that is central to the ultimate disposition of the case. As we stated in *Singh v Kolcaj Realty Corp.* (283 AD2d 350, 351 [2001]), "Where the offered proof intrudes upon the exclusive prerogative of the court to render a ruling on a legal issue, the attempt by a [party] to

arrogate to himself a judicial function under the guise of expert testimony will be rejected." Finally, we have previously ruled that the particular capacity in which a party functions—either as agent or principal—"is fundamental to the relationship of the parties and does not come within the scope of the exceptions for either explanation or supplementation permitted pursuant to the parol evidence rule (UCC 2-202)" (*Raj Jewelers v Dialuck Corp.*, 300 AD2d 124, 126 [2002]).

There is no merit to defendant's contention that summary judgment was improperly granted because its request for "documents relevant to Lepage's defense of industry custom and practice" received no response from plaintiff. Significantly, defendant not only opposed plaintiff's summary judgment motion but cross-moved for dismissal of the complaint (CPLR 3212). By doing so, defendant represented not merely that the proof of record was inadequate to warrant judgment in plaintiff's favor, but that the evidence was sufficient to require summary dismissal. The grant of summary judgment is the procedural equivalent of a trial (*Falk v Goodman*, 7 NY2d 87, 91 [1959]). By moving for accelerated judgment, a party submits the case for disposition on the record evidence, and the propriety of the court's decision will be reviewed on the basis of that same evidence. It is settled that an appellate court is bound by the record (*Block v Nelson*, 71 AD2d 509 [1979]), and, absent matter that is subject to judicial notice, review is limited to the evidence before the motion court (*Broida v Bancroft*, 103 AD2d 88, 93 [1984]; *see also Becker v City of New York*, 249 AD2d 96, 98 [1998]). As we stated in *Ritt v Lenox Hill Hosp.* (182 AD2d 560, 562 [1992]), "If a movant, in preparation of a motion for summary judgment, cannot assemble sufficient proof to dispel all questions of material fact, the motion should simply not be submitted." Having submitted an application for judgment on the record, defendant will not be heard to complain that the record was insufficient to support the disposition of its motion. Concur—Tom, J.P., Andrias, Sullivan, Ellerin and Sweeny, JJ.