OPINION OF THE COURT
Mary H. Smith, J.
This action arises out of a maintenance contract that had been entered into between Quantum and defendant Mercy College on or about June 6, 1998. Pursuant to the contract, Quantum agreed to provide mechanical, maintenance and repair services to Mercy’s Dobbs Ferry campus for five days a week over a period of five years (i.e., from July 1, 1998 through July 1, 2003).[1] In return for the services performed, Quantum was paid $44,352 a month. In providing its services, Quantum provided 12 employees to service the campus.
The contract had a covenant not to compete regarding Quantum’s personnel (the personnel clause). The personnel clause provided: “During the term of this agreement, upon its termination and for two years thereafter . . . [Mercy] may not, for any reason what so ever, employ, engage, or hire any employee of . . . [Quantum].” It is the interpretation of this personnel clause that is at issue in this motion.
The amended complaint alleges that, pursuant to a letter dated May 9, 2003, Mercy terminated the contract and that Mercy thereafter “engaged all of Quantum’s laborers from the time it terminated the contract with Quantum through the present.” (Amended complaint 1Í16.) The amended complaint further alleges that Mercy “caused Aramark, the maintenance and repair service provider that replaced Quantum at [Mercy], to fulfill its duties to [Mercy] by using Quantum’s laborers.” (Id. 1119.)
With regard to Aramark’s alleged wrongdoing, the amended complaint contains allegations that Anthony Malagrino, the director of facility services at Mercy, who, according to the complaint, was affiliated with Aramark, had some involvement in Mercy’s terminating Quantum’s contract and then hiring Quantum’s employees to work for Aramark in connection with Aramark’s taking over the maintenance work at the campus. Thus, the amended complaint alleges that, in or around July 2003, Aramark entered into a contract with Mercy to provide *887 the services that were previously being provided by Quantum. The amended complaint further alleges that “Aramark knew that Quantum and the College had a contract in place that precluded the College from engaging Quantum’s laborers from July, 2003 through July, 2005.” (Amended complaint 11 34.) Nevertheless, despite the knowledge of the personnel clause and despite the fact that “Aramark knew the identities of Quantum’s laborers and knew that they were laborers for Quantum,” the amended complaint alleges that “Aramark used and employed all of Quantum’s laborers for the purpose of carrying out and providing repair and maintenance services at the college.” (Id. 11 39.) The third cause of action against Aramark concludes that “Aramark intentionally and maliciously induced [Mercy] to breach its contract with Quantum . . . Aramark acted maliciously to injure Quantum . . . [and] Aramark acted maliciously to benefit itself.” (Amended complaint 111141-43.)
In support of its motion to dismiss the amended complaint on the grounds that it fails to state a cause of action for tortious interference with contract by defendant Aramark, Aramark argues that while the contract prohibits Mercy from employing, engaging or hiring Quantum employees during the contract’s five-year term and for the two years following the termination of the contract, the contract “does not prohibit Mercy from accepting services from a contractor that hires [Quantum’s] employees.” (Aramark’s mem of law at 2.) Aramark points out that the elements of a claim for tortious interference with contract are “ ‘the existence of a valid contract. . ., defendant’s knowledge of that contract, defendant’s intentional procurement of the third-party’s breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.’ ” (Id. at 3, quoting Beecher v Feldstein, 8 AD3d 597, 598 [2004].) Thus, Aramark argues that since one of the elements for a tortious interference with contract claim is an actual breach of contract, plaintiffs cause of action fails because “the unambiguous terms of the Contract do not apply to the conduct that, Plaintiff alleges, constitutes a breach” since by its terms the contract only prohibited Mercy from employing, engaging or hiring Quantum’s employees — not Mercy’s contracting with an independent contractor (here Aramark) who then employed Quantum’s employees. (Mem of law at 3-4.) Aramark further argues that to the extent that Quantum, through its allegations concerning Anthony Malagrino’s affiliation with both Aramark and Mercy, is “implicitly alleging that ARAMARK was *888 acting as an agent of Mercy . . . Plaintiff fails to state a cause of action for tortious interference against ARAMARK . . . [since] ‘[a]n agent cannot be held liable for inducing his principal to breach a contract with a third person.’ ” (Id. at 7, quoting Kartiganer Assoc. v Town of New Windsor, 108 AD2d 898, 899 [1985], appeal dismissed 65 NY2d 925 [1985].)
In opposition, Quantum argues that the “meaning that Ara-mark imputes to the provision is incompatible with any logical interpretation of its language” since the use of the terms employ and engage “shows that the Contract not only precluded the College from directly employing Quantum employees but also prohibited the College from engaging/using the employees in any way.” (Quantum’s mem of law in opposition at 4.) Thus, Quantum argues that “[i]f the parties sought only to prohibit the College from directly employing the laborers, the use of the word ‘employ’ by itself would have been sufficient and the word ‘engage’ would not have been included.” {Id. at 5.) Thus, plaintiff posits that given the purpose underlying the personnel clause, which was to prohibit the using of Quantum’s workers in any way other than through Quantum, Quantum’s interpretation of the word engage is the reasonable construction to place on the word. In any event, plaintiff argues that if the court ultimately determines that the word “engage” is subject to “varying reasonable interpretations” the resolution of this issue may not be made on a motion to dismiss and must be resolved by the factfinder.
Finally, with regard to Aramark’s argument that to the extent plaintiff is alleging an agency relationship between Aramark and Mercy, the complaint fails to state a cause of action, Quantum responds that: (1) it has not alleged that Aramark acted as an agent for Mercy, and (2) since the existence of an agency relationship is a question of fact, “Aramark’s unproven ‘agency argument’ does not entitle it to dismissal of the claim against it.” {Id. at 9-10.)
Standard of Review
In deciding a motion to dismiss a complaint for failure to state a claim under CPLR 3211, the allegations of the complaint, and all reasonable inferences that may be drawn from those allegations, must be accepted as true and the complaint must be liberally construed in favor of the petitioner. (See Anguita v Koch, 179 AD2d 454 [1992].) While plaintiff may be required to supply evidentiary support for his claims in response to a motion for summary judgment under CPLR 3212, he is not obli *889 gated to do so in response to a preanswer motion to dismiss under CPLR 3211. The central question on motions to dismiss is whether the complaint’s allegations state a legally cognizable cause of action. (See Held v Kaufman, 91 NY2d 425 [1998].) The court’s role is simply to determine whether the facts, as alleged, fit into any valid legal theory (see Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409 [2001]), and the court is not authorized to assess the relative merits of the complaint’s allegations against the defendant’s contrary assertions or to determine whether or not the plaintiff has produced evidence to support his claims. (See Salles v Chase Manhattan Bank, 300 AD2d 226 [2002].) As noted by one Court:
“Our scope of review applicable to defendant’s CPLR 3211 motion to dismiss is constrained to a determination whether the facts alleged by plaintiffs fit within any cognizable legal theory ... In making that determination, the allegations of fact set forth in plaintiffs’ complaint and their submissions in opposition to defendant’s motion are accepted as true, liberally construed and given every favorable inference. Dismissal under CPLR 3211 (a) (1) ‘is warranted only if the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law.’ ” (Hopkinson v Redwing Constr. Co., 301 AD2d 837, 837-838 [2003], quoting Leon v Martinez, 84 NY2d 83, 88 [1994].)
Here, defendant is relying on the contract’s terms and requesting that the court determine, as a matter of law, that the personnel clause does not pertain to the facts alleged in this case. Accordingly, for defendant to succeed on its motion to dismiss based on a defense founded upon documentary evidence, the . documentary evidence must be such that it resolves all factual issues as a matter of law, and conclusively disposes of plaintiffs claim. (Teitler v Pollack & Sons, 288 AD2d 302 [2001]; see also Arnav Indus., Inc. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner, 96 NY2d 300 [2001]; Wiener v Lazard Freres & Co., 241 AD2d 114 [1998].)
Defendant is correct in its assertion that:
“The interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in the complaint. Moreover, where factual allegations or legal conclusions are flatly contradicted by documentary evidence, *890 they are not to be presumed to be true, or even accorded favorable inference.” (Taussig v Clipper Group, L.P., 13 AD3d 166, 167 [2004], lv denied 4 NY3d 707 [2005]; see also Carfizzi v United Transp. Co. of R.I., 20 AD2d 707 [1964]; Ark Bryant Park Corp. v Bryant Park Restoration Corp., 285 AD2d 143 [2001]; 1550 Fifth Ave. Bay Shore v 1550 Fifth Ave., 297 AD2d 781 [2002], lv denied 99 NY2d 505 [2003].)
Nevertheless, it is also true that “the aim is a practical interpretation of the expressions of the parties to the end that there be a ‘realization of [their] reasonable expectations.’ ” (Brown Bros. Elec. Contrs. v Beam Constr. Corp., 41 NY2d 397, 400 [1977]; see also South Rd. Assoc. v International Bus. Machs. Corp., 2 AD3d 829, 833 [2003], affd 4 NY3d 272 [2005] [“The language of a contract must be interpreted ‘to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized’ ”]; BDO Seidman, LLP v Bloom, 5 Misc 3d 1018[A], 2004 NY Slip Op 51419[U], *2 [2004] [same].) Furthermore, courts will not adopt an interpretation of a contract that would render the benefit bestowed by the contract illusory. (Zurakov v Register.Com, Inc., 304 AD2d 176 [2003].) Thus, where the “interpretation of a contract term is susceptible to varying reasonable interpretations . . . intent must be gleaned from disputed evidence or from inferences outside the written words.” (Time Warner Entertainment Co. v Brustowsky, 221 AD2d 268, 268 [1995]; see also Icon Motors v Empire State Datsun, 178 AD2d 463 [1991].)
In Zurakov, the plaintiff and defendant entered into an agreement whereby defendant agreed to register plaintiffs domain name “Laborzionist.org.” Plaintiff sued defendant and claimed that defendant, by “not disclosing in the agreement that it intended to use [plaintiffs domain name], deprived him of this benefit by usurping the name and using it to direct those who typed in the domain name to defendant’s own site, which contained advertising for defendant and others.” (Zurakov, 304 AD2d at 178.) In that case, while the contract did not “in express terms grant plaintiff control over the domain name or the exclusive right to use the name,” the Court nevertheless denied defendant’s motion to dismiss because “whether ‘registration’ in the context of Internet domain names confers exclusive use and control presents a fact question that should not have been decided upon a motion to dismiss.” (Zurakov, 304 AD2d at 179-180.)
*891 The central issue in resolving the instant motion to dismiss is the interpretation of the personnel clause, and, in particular, the meaning of the word engage, when viewed in the context of the clause itself and the contract as a whole. The term itself is not defined in the contract. From a review of the contract as a whole, however, it is clear that the purpose behind the parties agreeing to the personnel clause was to ensure that Mercy would only have the benefit of Quantum’s employees[2] performing the maintenance work if those employees were obtained through Quantum. This personnel clause was to remain in effect for two years following the contract’s termination. In its original moving papers, Aramark argued that the contract “does not prohibit Mercy from accepting services from a contractor that hires Plaintiffs employees” since it only “restricts Mercy from hiring Quantum’s employees” either as employees or as independent contractors. (Aramark’s mem of law at 3-4.)[3] Aramark argues that “in employment and services contracts, the term ‘engage’ is used as a synonym for ‘employ.’ ” However, the case law cited does not stand for the proposition that the term engage should be so narrowly construed. Moreover, the parties’ use of the disjunctive “or,” indicates that the three terms were not to be used interchangeably and, instead, each word was to be construed as a separate alternate prohibition with regard to Mercy’s use of Quantum’s employees. (See, e.g., Matter of Van Patten v La Porta, 148 AD2d 858 [1989] [use of the disjunctive “or” between two or more coordinate words indicates alternatives]; see also Bassuk Bros., Inc. v Utica First Ins. Co., 2002 NY Slip Op 40508[U], *5 [2002], affd 1 AD3d 470 [2003], appeal dismissed 3 NY3d 696 [2004] [“the court concludes that the words written contract and agreement, being stated in the *892 disjunctive, must be considered separately”].) Therefore, the parties’ use of the term “engage” was intended to mean something different from the terms “employ” and “hire.” The court cannot agree that this contract clearly and unambiguously only proscribes Mercy’s direct hire of Quantum employees. Instead, it is arguable that the word engage encompassed Mercy’s retaining the services of Quantum’s employees through its hiring of Aramark, an independent contractor. To construe the personnel clause in the manner sought by defendant would eviscerate the import of that provision. Accordingly, the court finds defendant’s interpretation of the word engage to be overly restrictive.
In the alternative, defendant also argues that even if the term engage were to be given the more expansive construction so that the breach of contract element is satisfied, plaintiff’s amended complaint nevertheless fails to state a cause of action because the allegations in the complaint implicitly assert an agency relationship between Mercy (as principal) and Aramark (as agent) and, as a matter of law, an agent cannot be liable for tortiously inducing its principal to breach its contract.
As an initial matter, the court is not convinced that the amended complaint either implicitly or explicitly alleges an agency relationship between Mercy and Aramark. Instead, it appears that the allegations regarding Mr. Malagrino’s affiliation with both Aramark and Mercy are there to satisfy plaintiff’s burden of alleging Aramark’s knowledge of the personnel clause. Furthermore, all of the cases cited by Aramark are readily distinguishable as they involve a true principal/agent relationship wherein the agent was acting within the scope of his agency and the actions undertaken were solely benefitting the principal, and not the agent as in this case. (See Kartiganer Assoc. v Town of New Windsor, 108 AD2d 898, 899 [1985], appeal dismissed 65 NY2d 925 [1985] [town attorney could not be held liable as a matter of law for inducing the Town of New Windsor to breach contract with plaintiff because “(p)laintiff has not shown how (town attorney), or his firm, might personally benefit in any way from the town’s alleged breach of the contracts with plaintiff’]; Cunningham v Lewenson, 294 AD2d 327 [2002], appeal dismissed 99 NY2d 531 [2002] [defendant assistant dean could not be held liable for inducing Pace University to academically dismiss plaintiff from graduate program]; Pancake v Franzoni, 149 AD2d 575, 575-576 [1989] [court granted summary judgment to defendant attorney because plaintiff provided no *893 evidence that attorney “ever acted other than in his capacity as the seller’s attorney or that his acts were motivated by self-interest”]; Citicorp Retail Servs. v Wellington Mercantile Servs., 90 AD2d 532 [1982] [officers and employees of Citicorp could not be held liable for inducing the corporation to breach its contract with third-party plaintiff, and third-party plaintiffs were granted leave to allege specific facts (rather than in the current conclusory form) that the officers/employees acted for personal profit].) Thus, in those cases, the defendants’ insulation from liability turned on the fact that the agents were at all times acting on behalf of their principals, within the scope of their authority, and plaintiff had proffered no evidence that the agents stood to individually benefit from the breach of contract. Here, if the allegations of the complaint are proven to be true, whether or not Aramark was acting as an agent for Mercy in inducing it to breach its contract with Quantum, it is arguable that those actions were undertaken to benefit Aramark’s self-interest. Accordingly, Aramark’s alternate argument that as an agent of Mercy it cannot, as a matter of law, be held liable for inducing Mercy’s breach of contract, is also unavailing.
Based upon the foregoing, it is ordered that Aramark’s motion to dismiss the amended complaint is denied.

. The contract had a provision regarding termination, which provided that the contract’s term would renew annually automatically, unless either party cancelled in writing no less than 60 days prior to the term’s end.

. Clearly, there was quite a benefit to utilizing workers who were intimately familiar with Mercy’s facilities and experienced with the maintenance issues found therein, as opposed to training new workers to perform the maintenance tasks.

. Aramark also makes the rather convoluted argument that “engage” could not mean what plaintiff contends it to mean otherwise Mercy would have been breaching ,he contract by engaging Quantum’s employees while those employees were servicing Mercy during the time the contract was in place. Obviously, the clause was intended to mean that during the contract’s duration, Mercy could engage the employees through Quantum, but not on its own or through any other vehicle. And with regard to the two years following the contract’s termination, Mercy could not engage Quantum employees to perform its maintenance services. An interpretation which permits Mercy to engage those very same employees through an independent contractor clearly does not give effect to the parties’ reasonable expectations in agreeing to this personnel clause.